STATE OF IOWA, Appellee, v. HARDY FRIEND, Appellant.

No. 39200.

982

April 14, 1930.

Rehearing Denied September 22, 1930.

*F. E. Northup* and *M. W. Hyland,* for appellant.

*John Fletcher,* Attorney-general, and *Neill Garrett,* Assistant Attorney-general, for appellee.

Wagner, J.—The indictment charges:

"That the defendant, Hardy Friend, on or about the 15th day of November, 1926, in Marshall County, Iowa, did unlawfully and feloniously buy and receive stolen goods and property, to wit: Ten ladies' fur coats and four fur chokers, the property

of the H. Willard & Sons Company, and of the value in excess of $20, the defendant then and there knowing the said goods to have been stolen from said owners.''

. To this indictment the defendant entered a plea of not guilty, and filed a motion asking for a change of venue, which was sustained, and the case transferred to Tama County for trial,. where there have been two trials, the first resulting in a disagreement of the jury, and the second in a verdict of guilty. From the judgment entered upon the verdict, the defendant has appealed.

Sometime before daybreak on the 14th day of November, 1926, the front door of the store of H. Willard & Sons Company, in the city of Marshalltown, was broken by two burglars, to wit, Mooney and McDonald, and fur coats and chokers taken therefrom, which were of the value of more than $15,000. The furs were taken by the burglars to the Smith farm, near Marshalltown, where one of said burglars had previously worked, and temporarily stored in a small dilapidated V-shaped hog house. The burglars then returned to Marshalltown. They admit their guilt. According to their testimony, they met the defendant, Hardy Friend, the next day, and informed him that they had committed the burglary, and some talk was had among them as to the disposal of the furs. They testify that the defendant informed them he might buy some of them; that there were several talks among the three within the next day. or two; that, within a short time, probably during the night of the 15th of November (the record not clearly showing the exact date), the three went to the place of concealment of the furs, and there the defendant selected the furs referred to in the indictment, which were by the three brought to Marshalltown and left at the home of the defendant's mother, where he was residing; that the defendant paid several hundred dollars for the goods procured by him, and delivered intoxicating liquor, consisting of alcohol and whisky, and agreed to convey the remainder of the furs to Chicago and assist in disposing of them.

It is also shown by the record that the defendant had been using for storage purposes a feed way in a barn upon a farm near Marshalltown, owned by Heberle; that Mrs. Heberle, sometime in the spring of 1927, discovered four packages in the feed way, which were soft to the touch; that, upon her first discovery,

she did not open the same; that, sometime later, she took the packages to the house, opened them, and discovered the furs, with tags thereon, indicative of the fact that they were a portion of the Willard furs, stolen from the store the previous November. She, at that time, put them in a box, in a milk shed, or summer kitchen. She testified that she did not inform her husband that she had removed the packages from the barn. Sometime in June, the defendant appeared at the Heberle barn, and ascertained that the packages containing the furs had disappeared, and had a talk with Heberle about the disappearance of the packages, and Heberle informed him that he knew nothing about them; that he informed Heberle, in substance, that the packages contained furs, for which he had paid several hundred dollars, and that they were worth several thousand dollars. Heberle testified:

"He [Friend] asked me where they were. I said, 'If they are gone, I don't know.' I did not know at that time they were gone, and he said that some neighbor must have slipped in and took it; the law didn't take them; if the law had took them, he would have heard about it by this time: and he said he was out several thousand dollars."

Heberle further testified:

"He told me that, if anybody ever testified against him, it would be good night; he was liable to shoot him right on the witness stand."

It appears that, in August, Mrs. Heberle informed one of the partners of the Willard store as to the whereabouts of a portion of the furs, and he went with her to her home, where the furs were delivered to him. She explained that she did not report sooner because of fear of implication of guilt to her and her husband. These furs were produced at the time of the trial, and were clearly identified as a portion of the furs which were taken by the confessed burglars. The value of the furs referred to in the indictment is shown to be approximately $3,000. There is other testimony in the record; but, for the sake of brevity, we will not set it out. No motion for a directed verdict was made, and there is, and can be, no question, under the record,

as to the sufficiency of the evidence to support the verdict of the jury.

To obtain a reversal, the defendant attacks the instructions of the court, and relies upon alleged errors committed by the court in rulings upon the introduction of evidence and claimed prejudicial misconduct on the part of the trial court, and also upon the claim that the court erred in overruling his motion for a new trial, based upon newly discovered evidence.

The defendant excepted to the court's instruction on reasonable doubt. In this instruction, the court told the jury that a reasonable doubt of guilt is a doubt reasonably arising in the  mind of a juror from a consideration of all the evidence in the case, or from the lack of evidence on the part of the State; that in considering the case, the jury should not entertain as reasonable such doubts as might arise from fancy, caprice, imagination, or groundless conjecture; that a doubt, to be reasonable, must be one that arises from a candid and impartial consideration of the whole case, including the evidence offered, as well as the lack of evidence; that it should be such a doubt as would cause a reasonably prudent person to hesitate and pause before acting in the graver and more important affairs of life. The court then said:

"If, after a careful and impartial consideration of all the evidence presented in the case, you can feel and say that you have an abiding conviction of the guilt of the defendant, as charged in the indictment, and are fully satisfied of the truth of the charge, then you are satisfied beyond a reasonable doubt."

At this point, it is the appellant's contention that the words "are fully satisfied" should be modified by the use of the words "beyond a reasonable doubt." He would have the court tell the jury that, if they are fully satisfied beyond a reasonable doubt of the truth of the charge, then they are satisfied beyond a reasonable doubt. The appellant's objection is without merit.

In another instruction, the court told the jury:

"A statute of this state provides that, if any person buy or receive any stolen goods or property the stealing of which is larceny, knowing the same to have been so stolen, when the

 value of the property so bought or received exceeds the sum of $20 he is guilty of a felony, and punished as provided by law. The extent of the punishment, in case of conviction, is one for the court, and is not one to be considered by the jury."

The defendant objects to the words in the instruction, "he is guilty of a felony, and punished as provided by law," his contention being that said words should be stricken out of the instruction, and the words "he may be found guilty," or some similar expression, substituted in lieu thereof. The instruction is a correct statement of the statutory law, and further comment is unnecessary.

In another instruction, the court sets out the material averments of the indictment, and the appellant contends that the same does not limit the theft or stealing to the specific crime as  testified to by the perpetrators of the larceny, but would leave it open to any other larceny, even though the same may not have been within the period of the statute of limitations. In so far as the statute of limitations is concerned, the time which is material is the time when the appellant bought or received the goods, and the court clearly told the jury that one of the material averments is: "That defendant so bought or received said fur coats and chokers at Marshall County, state of Iowa, and on or about the 15th day of November, 1926." It must be borne in mind that the defendant is not on trial for the larceny, but only for buying or receiving goods obtained as the result of the larceny. The reading of the instruction given is sufficient answer to appellant's contention.

In another instruction, the court refers to certain elements of the crime, and says that it is necessary for the jury to find certain things beyond a reasonable doubt, closing the instruction  by saying: "But if the State has failed so to establish, then the jury need proceed no further herein, but should return its verdict finding the defendant not guilty." The appellant complains because the court omitted the words "beyond a reasonable doubt," in the closing words of the instruction; but it is apparent that the use of the word "so" is equivalent to

what the appellant contends is missing. Moreover, the instructions are to be read and considered as a connected whole, and the jury were plainly instructed that they must find all the elements of the crime established beyond a reasonable doubt before they could convict.

In another instruction, the court told the jury:

"Even though said coats and chokers were the property of H. Willard & Sons Company, and stolen from them, and thereafter bought or received by the defendant, the defendant would  not be guilty of any crime unless, at the time he so purchased or received the same, he knew they had been stolen. To show such knowledge of the theft, if any, of said furs, it is not, however, necessary for the State to prove that the defendant had personal knowledge of the larceny,—that is, the stealing of said furs. It is sufficient if the facts and circumstances known to him were sufficient to satisfy him or cause him to believe that the furs were stolen."

Appellant's complaint is with reference to the last two sentences of the instruction. There is no merit in this complaint. See *State v. Van Treese,* 198 Iowa 984. The complaint urged by the appellant is the equivalent of the complaint urged in the cited case. In the *Van Treese* case, we said:

"The specific complaint is that the court erred in permitting the jury to find the defendant guilty if he *believed,* when he received the currency, that it had been stolen. The contention is that it was incumbent upon the State to prove that the defendant *knew* that it had been stolen, and that it was not sufficient to show that he believed it had been stolen. The point is not well taken. It was not necessary for the State to prove that the defendant had personal knowledge of the larceny, in the sense that he was present as a witness thereof. It was sufficient if the facts and circumstances known to him were sufficient to satisfy him or cause him to believe that the goods were stolen. In such cases, belief is tantamount to knowledge, within the meaning of the statute; and such is the uniform holding of the courts. *State v. Feuerhaken,* 96 Iowa 299; *Huggins v. People,* 135 Ill. 243 (25 N. E. 1002) ; *Commonwealth v. Leonard,*

140 Mass. 473 (4 N. E. 96); *Commonwealth v. Kronick,* 196 Mass. 286 (82 N. E. 39)."

The foregoing instruction embodies the thought used by this court in the cited case. There is no error at this point.

In the following instruction, the court again refers to the fact that, before the jury could convict the defendant, they must find that he knew that the coats and chokers were stolen, and the appellant contends that this conflicts with the prior instruction last above referred to; but it is apparent that, in the last foregoing instruction, the court fully explained the meaning of the term "knowledge of the theft," and that, when the instructions are read and considered as a connected whole, there can be, and is, no conflict, and the same could not be misunderstood by the jury. The appellant urges that the question of value referred to in the instruction is only an incidental matter, and that there is no dispute that the value of the furs greatly exceeded said amount. This being true, we are unable to conceive what tenable objection the appellant can have to this portion of the instruction.

In another instruction, the court told the jury:

"Evidence has been offered of certain admissions it is claimed the defendant made. On the subject of oral admissions you are instructed that such evidence, consisting, as it does, of  the repetition of oral statements, is subject to much imperfection and mistake, through misunderstanding and want of proper understanding of the words by the hearers, or the imperfection of their memory, and should be cautiously received; but when oral admissions are deliberately made, and are correctly given, they are often the most satisfactory evidence. The jury should carefully consider all the circumstances under which said admissions, if any, were made, so far as shown by the evidence, and give them such weight and influence as they believe them justly entitled to receive."

There is evidence warranting the giving of said instruction, and the same has, in substance, been approved by this court. See *Martin v. Town of Algona,* 40 Iowa 390. Also, see *Davis v. City of Dubuque,* 209 Iowa 1324.

The defendant became a witness in his own behalf. On

cross-examination, he was asked as to whether, at a definite place and time fixed, which was during the previous trial, he did not tell Emil Larson, one of the jurors at said trial, in the presence of two other jurors, ''If you fellows will try and turn this case in my favor, I will make it worth your while;'' and he answered, ''That is a black lie.'' On rebuttal, Larson, as a witness for the State, testified that he did make the statement. The court instructed the jury that the State had offered evidence in an attempt to show that defendant sought to improperly influence certain of the jurors who were sitting on the former trial, and that, if they believed that the defendant attempted to improperly influence jurors on the former trial of the cause, such conduct on the part of the defendant would be a circumstance to be considered by them in connection with all the other facts and circumstances in evidence, in determining the guilt or innocence of the defendant, and should receive such weight and influence as they deemed it justly entitled to. The appellant complains of this instruction. The exception to the instruction does not include that the testimony of Larson could be considered only for impeachment purposes, and therefore that question is not before us. That such instruction is proper, see *State v. Kimes*, 152 Iowa 240. The aforesaid instruction is modeled after the one there given and approved. In the cited case, the testimony tended to show that the defendant attempted to suborn witnesses. Here, the testimony is such that the jury could find that the defendant attempted to bribe jurors. Such an instruction, being proper in the one case, is not improper in the other.

The appellant objected to the aforesaid question propounded to the defendant as a witness, as not proper cross-examination. Section 13892 of the Code, 1927, provides that:

''When the defendant testifies in his own behalf, he shall be subject to cross-examination as an ordinary witness, but the State shall be strictly confined therein to the matters testified to in the examination in chief.''

The defendant had testified, denying his guilt. The rule of our previous cases is that the defendant in a criminal action, when testifying in his own behalf, stands upon the same footing

 as any other witness with relation to matters affecting his credibility. See *State v. Kuhn,* 117 Iowa 216; *State v. Brandenberger,* 151 Iowa 197; *State v. Burris,* 198 Iowa 1156; *State v. McPursley,* 144 Iowa 414; 40 Cyc. 2569.

In the *Kuhn* case, supra, this court declared:

"It is urged that Section 5485 of the Code [now Section 13892, Code of 1927] forbids the cross-examination of a criminal defendant who goes upon the witness stand as to any matters not inquired about in chief. But this court has held that, with relation to his memory, history, motives, or matters affecting credibility, such witness stands upon the same footing as any other."

In the *Brandenberger* case, supra, this court made the following pronouncement:

"Now, while the statute (Code, Section 5485 [now Section 13892, Code, 1927]) provides that, when the defendant testifies on his own behalf, he shall be subject to cross-examination as an ordinary witness, but that the State shall be strictly confined therein to the matters testified to in the examination in chief, yet it is the rule of this court, as everywhere, that such witness stands upon the same footing as any other with relation to his memory, history, motives, or matters affecting his credibility. * * * [Citing cases.] Again, it is quite generally held that the extent to which such inquiries may be carried must necessarily rest in the sound discretion of the trial court."

The chief object of cross-examination is to weaken the credibility of the witness, and it is permissible to attack the same by a showing that, at other times and places, he has made statements or been guilty of conduct inconsistent with his testimony. See *Starry v. Starry & Lynch,* 208 Iowa 228. Thus it is seen that the cross-examination of the defendant was proper, and there was no abuse of discretion in this respect by the trial court.

The defendant strenuously urges that the court was in error in permitting the former juror, Larson, to answer the question propounded to him. It was proper impeaching testi-

 mony. See *Starry v. Starry & Lynch,* 208 Iowa 228. An innocent man is not likely to make an attempt to bribe jurors. *Kidd v. Ward,* 91 Iowa 371, 374. But it is contended by the appellant that, if he attempted to bribe the jurors, he is guilty of a crime under Section 13170 of the Code, and that the State is not permitted to introduce evidence of other crimes committed by the defendant. The fact that his statements or conduct tending to implicate him in guilt in the instant case make him guilty of another crime is not sufficient reason to prevent the admission of such evidence. In *State v. Burzette,* 208 Iowa 818, we declared:

"The contention is that this evidence served no material function in the case, and that its only effect was to permit the State to prove the commission of another crime. The evidence was not offered for the purpose of proving another crime. If the facts proved had a material bearing upon the issues in the case, they were admissible in evidence; and this would be true, regardless of whether they constituted a crime or not."

In *State v. O'Connell,* 144 Iowa 559, we said:

"If a circumstance is so related to or connected with the alleged crime under investigation as to be otherwise admissible, it is not rendered inadmissible because it tends to prove another crime."

We hold that the action of the court in permitting the cross-examination of the defendant as aforesaid, and in receiving the evidence of the juror Larson in rebuttal, was not improper. As hereinbefore stated, no exception was taken to the aforesaid instruction that the evidence was admissible and could be considered by the jury only for impeachment purposes, and we need not determine that question. It has been held by us that testimony offered by the State which actually rebuts in some degree the testimony of the accused is admissible even though it might have been offered by the State in chief, and in such event, is properly considered as rebutting testimony, and the objection that the name of the witness so testifying does not appear upon the indictment is not good. See *State v. Graham,* 203 Iowa 532.

For impeachment purposes, the defendant was asked, on cross-examination, whether he had not been convicted of the crime of rape in the state of Minnesota within the last five years. To this question the defendant objected, as in-competent, irrelevant, and immaterial, and not a proper impeachment question. The objection was overruled, and the defendant answered in the affirmative. This ruling of the court is now assigned as error. Section 11270 of the Code provides:

"A witness may be interrogated as to his previous conviction for a felony. No other proof is competent, except the record thereof."

It is not contended by the defendant that rape is not a felony in Minnesota. His contention is that the interrogatory relative to the conviction of a specific felony is improper. In *State v. Concord*, 172 Iowa 467, the defendant was on trial for the crime of burglary, and was required to answer, on cross-examination, that he had been convicted of the crime of burglary before; and we there held that it is improper to ask and press the question to an affirmative answer whether the defendant had not been theretofore convicted of the same specified felony, it appearing that the manifest purpose was not to use the answer for impeaching purposes, but to show that the defendant had been convicted of the identical offense for which he was then on trial. Such is not the instant case. The defendant was on trial for buying and receiving stolen goods, and the question propounded was as to whether or not he had been previously convicted of the crime of rape. The ruling of the trial court is sustained by our previous cases. See *State v. Carter*, 121 Iowa 135; *Dickson v. Yates*, 194 Iowa 910; *State v. Williams*, 197 Iowa 813. In *State v. Carter*, supra, the defendant was on trial for the crime of larceny, and on cross-examination, was asked whether he had not been previously tried and convicted upon the charge of obtaining a man's signature to a promissory note by false pretenses. In passing upon the question here involved, the court there said:

"Appellant concedes that, under Code Section 4613 [now 11270], 'a witness may be interrogated as to his previous conviction of a felony;' but if we understand the argument of coun-

sel, it is contended that the question must be substantially in the language of the statute, and that to ask the witness whether he has ever been convicted of any specific crime is not allowable. The cases relied upon by counsel do not announce any such construction of the statute.''

In *State v. Williams*, 197 Iowa 813, we held that, where the felonies for which there had been a previous conviction were not the same as the one for which the defendant is on trial, it is not improper that the character of the previous felonies be pointed out and identified. We there said:

''The offenses inquired about were not similar to the one for which the defendant was then being tried, and the case does not come within the rule laid down in *State v. Concord*, 172 Iowa 467, where there was a manifest effort to show, under the guise of impeachment, that the defendant had been convicted of a like offense.''

In *Dickson v. Yates*, 194 Iowa 910, we declared:

''This provision [now Section 11270 of the Code] does not purport to require that the question shall be put in any particular or stereotyped form. It is the right of counsel to formulate the question in his own way, with proper respect to the intent of the statute. It is not necessary to follow the express language of the statute. *State v. Carter*, 121 Iowa 135. The evidence made competent by this statute is for the sole purpose of affecting the credibility of the witness.''

It is apparent that the record of the conviction provided for in the aforesaid statutory provision would necessarily give the specific felony of which the witness was convicted, and under said statute, said record is admissible. There is no error at this point.

Relative to the claimed prejudicial remarks made by the court in ruling upon the evidence, no claim of prejudice was made during the trial. Moreover, the court, in the matter of which complaint is now made, was merely ruling on objections made, and in no manner referred to what the facts are, or to the credibility to be given to the witnesses. Manifestly, there is no error at this point.

The appellant complains because of the action of the court

in overruling his motion for a new trial, based upon newly discovered evidence. The claimed newly discovered evidence is that of the two jurors referred to in the aforesaid testimony of the juror Larson, which it is claimed will refute said testimony. It is shown by the testimony of Larson that he gave the name of one of the jurors, but could not remember the name of the other. The trial was not concluded until the next day after Larson's testimony was taken. The appellant did not ask for a postponement of the trial. No sufficient diligence is shown. The granting of a new trial on newly discovered evidence rests largely in the sound discretion of the trial court, and no abuse of discretion is shown. Moreover, newly discovered evidence is not a statutory ground for a new trial in a criminal case. See *State v. Maupin*, 196 Iowa 904; *State v. Pavey*, 193 Iowa 985; *State v. Barrett*, 197 Iowa 769.

Many other alleged grounds of error are urged, all of which have had our careful consideration. They relate to the rulings of the court on the introduction of evidence. Said rulings are correct, or not prejudicial to the defendant. We have discussed all alleged grounds of error that seem to merit particular consideration. As we believe, the defendant had a fair trial. The jury have spoken. The verdict is amply sustained by the evidence, and the judgment of the trial court is hereby affirmed. —*Affirmed*.

MORLING, C. J., and STEVENS, DE GRAFF, and ALBERT, JJ., concur.