STATE OF IOWA, appellee, v. CHARLES NOEL BROWN, appellant.

No. 50476.

FEBRUARY 6, 1962.

Philip J. Willson, of Council Bluffs, for appellant.

Evan Hultman, Attorney General, John H. Allen, Assistant Attorney General, and Peter J. Peters, of Council Bluffs, County Attorney, for appellee.

GARFIELD, C. J.—Defendant, Charles Noel Brown, was indicted for the murder of Alvin E. Koehrsen on or about Feb-

ruary 22, 1961, in violation of section 690.1, Code, 1958. He was well represented by an able attorney appointed to defend him. A plea of not guilty was entered and trial was had. The jury found defendant guilty of murder in the first degree and directed the punishment shall be death rather than life imprisonment. (See Code section 690.5.) From judgment pursuant to the verdict defendant has appealed. We affirm the judgment.

Sufficiency of the evidence to support the verdict of first-degree murder is not, and could not be, challenged. Defendant, then age 27, was staying in Minneapolis with a Josephine Nesbit on February 20, 1961. He had left his wife and four children (his mother testifies there were five) sometime before then in Minneapolis. Defendant associated "off and on" the last four or five years with Charles B. Kelley. About a week or two before the fatal shooting of Koehrsen defendant purchased two pistols, of .38- and .32-caliber, in a Minneapolis pawnshop.

Defendant, Kelley and the Nesbit woman took a taxi on the afternoon of February 20 from Minneapolis to St. Paul where they boarded a bus for Omaha, across the Missouri River from Council Bluffs. According to defendant's voluntary statement to Council Bluffs police on the morning of February 23, they got into a little trouble in Omaha and decided to come to Council Bluffs on the 22d, get a car and take off from the area. The three took a cab from Omaha to Council Bluffs as planned on the evening of the 22d. The men left the woman in a tavern with instructions to wait until they got a car, evidently by stealing it, and returned for her.

Defendant and Kelley went to an intersection near the post office where Koehrsen, in his 1958 Chevrolet, was waiting for the stoplight to change. Defendant and Kelley got in the car and defendant, with his .38 pistol drawn, ordered Koehrsen to drive on as directed. After decedent drove about five or six blocks defendant ordered him to pull over to the curb and stop. Defendant's written statement above referred to states "due to the fact I knew I was wanted in a couple of other places I used this pistol and shot this man several times. I figured I had to do this to keep him from identifying me. After I shot this

man I got in behind the steering wheel and tried to get this car started. I failed to do this so got out and walked away."

Koehrsen was seen falling or being pushed onto the parking from the passenger's side of his automobile. Seven to nine bullets were in his body from a gun barrel pressed against it or his clothing. After futile efforts at emergency surgery, death came on the 24th.

After leaving Koehrsen defendant walked around a block to a supermarket parking lot where Kenneth Vencel was entering his Ford car. Defendant walked over to him and told him to get over, as defendant had a gun and meant business. Defendant's statement says, "He got over and I drove this car to a residential area * * *. I pulled up to the curb and stopped and this man [Vencel] got out of this car and tried to run. I knew I had to shoot this man also as he was trying to get to a place and call help. I fired several shots at him, both while facing me and running away." Fortunately Vencel was not mortally wounded.

After the shooting of Vencel, defendant, with Kelley, drove the Ford to the tavern for Josephine and the three then went to Missouri Valley, some 20 miles north of Council Bluffs. Defendant had trouble with the Ford, could not keep it running and abandoned it in an alley at Missouri Valley. Kelley bought three bus tickets there for Kansas City and about 11 p.m. the trio boarded a bus headed south. Defendant fell asleep a couple of minutes later. About 11:20 officers stopped the bus near the north edge of Council Bluffs and the three were taken into custody.

Defendant freely admitted he shot both Koehrsen and Vencel. He said, "You know what I did." Also that it was not hard, it was easy, to shoot somebody like Koehrsen, "he never had a gun." He told two officers, in substance, he had gotten to the place where he did not care any more. To one of them he said in effect that if the woman had not been with them there would have been shooting when they were arrested—they did not have anything to lose by doing so.

Although defendant took the witness stand to testify to his eighth-grade education, Army service, marriage at 16, conviction of forgery in Indiana, father's alcoholism and his own

addiction to liquor, his testimony ends with his departure from Minneapolis, it is apparent for no good purpose. Defendant denies none of the State's evidence.

I. Defendant's first assigned error asserts the State was permitted to amend the indictment to charge a different offense. The indictment accuses defendant of the crime of murder for that on or about February 22, 1961, in Pottawattamie County, Iowa, he did, with malice aforethought, kill Alvin E. Koehrsen, in violation of section 690.1, Iowa Code, 1958. Ten days before the trial the State moved to amend the indictment by inserting "while attempting to perpetrate a robbery" after "aforethought." Defendant moved to strike the State's motion on the ground it attempted to substitute a different charge. A week before the trial the amendment was allowed.

Code section 773.42 (all references are to the Code of 1958) provides: "The court may, on motion of the state, and before or during the trial, order the indictment so amended as to correct errors or omissions in matters of form or substance."

Section 773.45 states: "Such amendment shall not be ordered when it will have the effect of charging * * * an offense which is different than the offense which was intended to be charged in the indictment * * *."

■■ This amendment does not charge a different offense from that charged in the indictment. Under our law there is but one crime called murder. So-called degrees of the offense do not constitute distinct crimes but gradations of the same crime for the purpose of permitting punishment to be varied according to the circumstances of greater or less enormity which characterize the criminal act. The indictment specifically charges a violation of section 690.1 and includes a charge of murder in the first degree. State v. Nutter, 248 Iowa 772, 775, 81 N.W.2d 20, 21, 22, and citations. See also State v. Hodge, 252 Iowa 449, 460, 105 N.W.2d 613, 619. First-degree murder may be committed in attempting to perpetrate a robbery or one of other named crimes and by other means. Code section 690.2; State v. Jackson, 251 Iowa 537, 542, 101 N.W.2d 731, 734.

■ Under Code section 773.34 the State could have charged merely that Charles Noel Brown murdered Alvin E. Koehrsen.

The amendment to the indictment was therefore unnecessary but harmless. The court's first instruction to the jury, which summarizes the indictment, does not refer to the words added by amendment. We see no impropriety in this and none is suggested.

That the evidence supports a finding of murder in attempting to perpetrate a robbery see State v. Jackson, supra, 251 Iowa 537, 545, 101 N.W.2d 731, 736; State v. Kobylasz, 242 Iowa 1161, 1167, 47 N.W.2d 167, 170; State v. Calhoun, 72 Iowa 432, 435, 436, 34 N.W. 194, 196, 2 Am. St. Rep. 252; 77 C. J. S., Robbery, section 9; Annotations, 123 A. L. R. 1099.

II. Defendant asserts the court improperly permitted the State to exercise peremptory challenges of jurors after consecutive waivers of such challenges by both parties. After challenges of jurors for cause were waived by both sides the State waived its first peremptory challenge and defendant waived his first such challenge. When the State elected to waive its second challenge defendant objected on the ground the consecutive waivers of the first challenge amounted to a waiver of all and the State was then required to exercise its first strike. The prosecuting attorney then claimed the right to exercise the rest of his peremptory challenges notwithstanding his waiver of the first two. The court ruled the State had not waived all its challenges and permitted it to exercise those not waived. It also allowed defendant, with the State's consent, to withdraw his waiver of his first peremptory challenge and to exercise the eight challenges to which he was entitled under Code section 779.11, and all eight were exercised.

Peremptory challenges of jurors in criminal cases are to be exercised in the same manner as those in civil trials. Code section 779.10. Rule 187(g), Rules of Civil Procedure, provides: "After all challenges for cause are completed, plaintiff and defendant shall alternately make or waive their peremptory challenges by appropriate notations on the jury list."

Defendant asserts the rule is that consecutive waivers of a peremptory challenge by opposing parties amount to an acceptance of the jurors then in the jury box and preclude the exer-

cise of further challenges. No rule of court, statute or decision supporting the assertion has come to our attention.

State v. Hunter, 118 Iowa 686, 689–691, 92 N.W. 872, considers a like question at length. There defendant's counsel announced he waived one more challenge. The prosecutor then said, "So do we." The jury was then sworn over defendant's protest he was entitled to exercise his remaining challenges. The court's action was held to be error, one of several on which a retrial was ordered. The opinion states:

"Of course, one entitled to peremptory challenges may waive the right, but the waiver, in order to be conclusive, must, as it seems to us, be a waiver as to all to which the party is entitled. If the waiver is of the right to exercise a single challenge, as in this case, we know of no reason for holding that the party is concluded thereby. The practice generally is to waive all when any waiver is made, and, where both parties waive, and there has been no change in the personnel of the jury or of environment, such waiver may well be held conclusive, *although even in such a case we think the court might very well permit a party to exercise his right at any time before the jury is actually sworn, provided such party is acting in good faith, and not with intent to gain advantage, or to delay the trial of the cause.* The order of challenge is fixed by statute, and, in any event, this order should be preserved. If that is done, we do not see how one may gain an advantage over the other by permitting him to interpose a peremptory challenge at any time before the jury is sworn. * * * [Emphasis added.]

"* * * The authorities very generally hold that the right to exercise a peremptory challenge is not lost until the jury is sworn [citations]."

Other precedents in support of this last quoted statement are found in annotations 3 A. L. R.2d 499, 504 to 507.

State v. Icenbice, 126 Iowa 16, 19, 101 N.W. 273, says of State v. Hunter, supra, "The ruling of the lower court * * * was that the waiver of one challenge constituted a waiver of all other peremptory challenges to the same jurors. This ruling was held erroneous * * *."

We see little distinction between the situation we now

have and that in the Hunter case except here it was the State, rather than defendant, which protested that a waiver of one challenge, or even two, was not a waiver of all. The same rule should apply to both situations. The trial court thought the prosecutor did not act in bad faith nor for the purpose of delaying the trial.

The trial court has discretion in a matter of this kind and no abuse thereof appears here. See annotations, 3 A. L. R.2d 499, 508, 509; 24A C. J. S., Criminal Law, section 1867.

III. It is said the court improperly admitted evidence of subsequent crimes and defendant's connection therewith. The evidence referred to is mainly contained in the written statement defendant made to police the morning after the shooting. Some oral admissions of defendant, later embodied in the written statement, were also shown. It is not claimed either the oral or written statements were not voluntary.

In these oral and written statements, as previously indicated, defendant told of shooting "both men", obtaining Vencel's car by robbery and driving it to Missouri Valley, pursuant to the plan agreed upon in Omaha just before coming to Council Bluffs. Also that defendant's motive in shooting Vencel was the same as characterized his fatal shooting of Koehrsen. The crime directed at Vencel evidently followed by only minutes the shooting of Koehrsen. Defendant objected to the evidence as irrelevant and immaterial and, to some of it, as relating to collateral issues. The court sustained like objections to the testimony of Vencel but ruled the statements of defendant should be received notwithstanding parts thereof referred to the Vencel transaction.

There are at least two sufficient answers to this claim of error. All of what an accused has to say about the commission of the crime with which he is charged is admissible even though incidentally the conversation may show the accused committed another offense. State v. Maupin, 196 Iowa 904, 909, 192 N.W. 828, 195 N.W. 517; State v. Grimm, 221 Iowa 652, 656, 266 N.W. 19; State v. Triplett, 248 Iowa 339, 352, 79 N.W. 2d 391, 399. See also State v. Crisman, 244 Iowa 590, 593–595,

57 N.W.2d 207, 209, 210, and citations. State v. Maupin upholds a sentence of death for murder.

■ 22A C. J. S., Criminal Law, section 738, page 1095 (1961), says "* * * an admission otherwise admissible does not cease to be so because it happens to show the commission of an independent crime." See also 23 Id., section 820, pages 201, 202.

■ One of the admissions most complained of is, as stated, that defendant said he shot both men. Certainly his admission he shot Koehrsen is proper evidence. We think it is no less so because defendant chose voluntarily to couple with it inseparably the statement he also shot Vencel, as he did by saying he shot both men.

In what we have just said we assume, without so deciding, that evidence defendant shot Vencel, robbed him of his car and drove it away is irrelevant. We are clearly of the opinion, however, such evidence is relevant to the crime charged herein and the oral and written statements were, for this reason, properly received.

"Evidence that accused has admitted the commission of other crimes is also competent, where the fact of their commission is relevant, * * *." 22A C. J. S., Criminal Law, section 738, page 1095.

■ Of course it has been repeatedly said evidence of crimes other than the one charged is inadmissible. However, the rule is subject to well-recognized exceptions. It fully applies in the sense that one may not be proven guilty of a crime with which he is charged by proving him guilty of another crime. So this defendant could not be proven guilty of the murder of Koehrsen by proof that he murdered Vencel, assuming the shooting of Vencel were fatal. But it does not follow that evidence of the shooting of Vencel under the circumstances here is not receivable on the trial for the murder of Koehrsen.

The Iowa decision most frequently cited for the proposition that evidence of other crimes is inadmissible is State v. Vance, 119 Iowa 685, 94 N.W. 204 (overruled on another point in State v. Simpson, 243 Iowa 65, 72, 50 N.W.2d 601, 604, 605, and citations). The Vance opinion classifies five exceptions to

the rule. Evidence of the Vencel transaction was receivable under any of them.

22A C. J. S., Criminal Law, section 683, page 751, cites precedents from 44 jurisdictions for the statement, "So, it is a generally accepted rule that evidence which is otherwise competent or relevant to establish accused's guilt of the crime charged is not rendered inadmissible by the fact that it incidentally proves or tends to prove him guilty of another and distinct crime."

We think this is the true rule. It accords with many of our decisions, including State v. Schlak, 253 Iowa 113, 115, 111 N.W.2d 289, 291; State v. Triplett, supra, 248 Iowa 339, 352, 79 N.W.2d 391, 399, cert. den. 357 U. S. 217, 78 S. Ct. 1358, 2 L.Ed.2d 1361; State v. Linzmeyer, 248 Iowa 31, 37, 79 N.W.2d 206, 209; State v. Williams, 245 Iowa 494, 504, 62 N.W.2d 742, 747; State v. Rand, 238 Iowa 250, 263–272, 25 N.W.2d 800, 807–811, 170 A. L. R. 289, 300–304; State v. Dunne, 234 Iowa 1185, 1195, 15 N.W.2d 296, 301, 302. See Article, 41 Iowa Law Review 325 et seq., on Other Vices, Other Crimes, by Professor M. C. Slough, and another.

We feel too that evidence of what defendant did immediately after shooting decedent was admissible under our holdings that where the acts are so closely related in time and place and so intimately associated with each other that they form a continuous transaction, the whole may be shown—what immediately preceded and immediately followed the act complained of—for the purpose of showing the scienter or quo animo of the accused. State v. Holoubek, 246 Iowa 109, 113, 66 N.W.2d 861, 863, and citations.

We may observe, without committing ourselves thereto, there is authority that where the jury determines whether punishment shall be death or life imprisonment, evidence of other crimes is admissible as an aid to the jury in fixing the punishment. State v. Hofer, 238 Iowa 820, 831, 28 N.W.2d 475, 481, and citations. See also 22A C. J. S., Criminal Law, section 691(14)c, page 851.

IV. Defendant contends he was improperly cross-examined. We refer, just preceding Division I hereof, to his direct exam-

ination which ends with his leaving Minneapolis. On cross-examination he was asked his reason for leaving. Over his objection as not proper cross-examination he answered, "I got in some trouble in Minneapolis."

Defendant relies upon Code section 781.13 which states: "When the defendant testifies in his own behalf, he shall be subject to cross-examination as an ordinary witness, but the state shall be strictly confined therein to the matters testified to in the examination in chief."

We have repeatedly held this statute does not place a defendant-witness upon any different footing from any other witness with relation to his memory, history, motives or matters affecting his credibility. State v. Voelpel, 208 Iowa 1049, 1050, 1051, 226 N.W. 770, 771, and citations; State v. Friend, 210 Iowa 980, 990, 230 N.W. 425, and citations; State v. Williams, 238 Iowa 838, 850, 28 N.W.2d 514, 521.

We have also said, "It is an elementary principle that counsel for the State is privileged to cross-examine the defendant as to his previous history, his prior conduct, habits, and ways of living, as affecting his credibility * * * [citations]." State v. Bittner, 209 Iowa 109, 118, 227 N.W. 601, 605.

What may be said to "be strictly confined" to matters testified to in chief rests largely in the discretion of the trial court. State v. Ragona, 232 Iowa 700, 703, 5 N.W.2d 907, 909, where we held "There was no such clear abuse of discretion herein as would warrant a reversal at our hands." See also State v. Bittner, supra, and, as to the scope of section 781.13, quoted above, State v. Shepard, 247 Iowa 258, 265, 73 N.W.2d 69, 73.

We think permitting on cross-examination the single answer now complained of was not an abuse of discretion such as to justify a reversal.

Also, in view of other testimony, the ruling was not prejudicial to defendant. There is a good deal of other evidence regarding trouble defendant has been in. In fact part of his direct examination is: "I drink nights and go to work days all but this last time then I started drinking for about a week before I started in this trouble then I didn't quit at no time. I

served a year in Indiana and was paroled * * *. Shortly after I left Indiana I was drunk again and wrote another check. My parole had not been released at that time." He then tells how he went to Atlanta for about three months, then to Little Rock for about six months, to Wichita for about a year and then to Minneapolis.

On cross-examination defendant testifies without objection he had trouble while in the Army from a fight. As previously stated, defendant told the police "we got into a little trouble in Omaha" and gave as his motive for shooting both Koehrsen and Vencel that he was wanted in two other places and thought it necessary to shoot them to prevent their identifying him. And defendant's statement to the officers on February 23 says, "A few days ago Kelley and I got into some trouble in Minneapolis and decided we should leave."

V. It is said the jury improperly considered the possibility of parole and relied upon a misconception of law as to parole in reaching its verdict.

While the jury was deliberating it made this request of the trial court: "If the verdict should happen to be life imprisonment * * * is there any chance for parole? If so, after how many years?" The court then gave the jury a written instruction stating it must return its verdict on one of the forms submitted with the instructions and "You have a right to assume any verdict returned by you will be faithfully carried out * * *. Should you desire to make any recommendations after you have agreed upon your verdict you may write them on * * * paper * * * and return it with your verdict."

No fault is found with this instruction nor the procedure the court followed. The quoted part of the instruction seems quite favorable to defendant upon the point raised. One of the instructions originally given states "you must not consider nor discuss any matter outside the evidence and these instructions but base your verdict solely upon the evidence and law as herein given you * * *." The four forms of verdict submitted to the jury were: guilty of murder in the second degree, guilty of murder in the first degree with life imprisonment, guilty of murder in the first degree with death, and not guilty.

Attached to defendant's motion for new trial were unsworn statements of two jurors, one the foreman. One statement is so vague it does not support the claim the jury improperly considered the possibility of parole. In answer to the question by defendant's counsel, "Did some jurors feel there was a possibility of parole?" the foreman said (according to his statement), "They were all too sure it would be parole in too short a time under the circumstances. * * * There is always a chance for parole in some cases way too soon and naturally that was their feeling." The court considered the motion for new trial and attached statements and overruled the motion.

Defendant contends the jury relied upon a misconception of the law in that parole from life imprisonment is not authorized by Code section 247.5 unless the governor has first commuted the sentence to a term of years.

 We think the verdict may not be impeached in the manner attempted here. We have frequently held it is not competent to show by statements of jurors what influenced the verdict. That is a matter of opinion which inheres in the verdict. Accordingly it may not be shown in such manner, to avoid the verdict, that a juror did not assent to it, misunderstood the court's instructions or the testimony, was unduly influenced by statements of fellow jurors, was mistaken in his calculations or judgment, or other matters resting alone in the juror's breast. These all inhere in the verdict. In re Estate of Murray, 238 Iowa 112, 120, 26 N.W.2d 58, 63, and citations; Long v. Gilchrist, 251 Iowa 1294, 1299, 1300, 105 N.W.2d 82, 85, 86, and citations; Harden v. Illinois Central R. Co., 253 Iowa 341, 112 N.W.2d 324, and citations.

 State v. Baker, 246 Iowa 215, 239, 66 N.W.2d 303, 316, 317, cites numerous precedents for the statement: "The deliberations of jurors, their reasons and arguments, what influenced or induced them in reaching a final conclusion, all inhere in that verdict, and it cannot be nullified or impeached by affidavits of jurors with respect to those matters."

 Many of our decisions point out the trial court has a good deal of discretion in passing on such a ground for new trial.

State v. Baker, supra; Hamdorf v. Corrie, 251 Iowa 896, 913, 914, 101 N.W.2d 836, 846, and citations.

24 C. J. S., Criminal Law, section 1494a(1), page 303, states: "Where no extraneous influences are involved, jurors are not competent * * * to prove, on a motion for a new trial, the grounds on which their verdict was based, or. the reasons or motives influencing their action * * *."

There is no showing here the jury was misinformed by anyone on the matter of parole, nor is there any persuasive showing the jury misconceived the law with regard to it. Denial of a new trial on this ground was not an abuse of discretion.

State v. Kirk, 168 Iowa 244, 256–262, 150 N.W. 91, cited by defendant, presents quite a different situation. "There the jury procured a Code and ascertained the penalties for the offenses included in the indictment for murder 'for the evident purpose of taking the punishment into account in determining the issue as to defendant's guilt.' (Page 260 of 168 Iowa.) The information thus obtained was incomplete and inaccurate in that since the Code was published the indeterminate sentence law was enacted which required the imposition of a sentence in all cases, except treason and murder, for an indeterminate term not exceeding the maximum. A verdict of manslaughter was returned with a recommendation to the court of mercy. We held it was likely the verdict was influenced by the erroneous conception the jury obtained from the Code of the punishment to be administered and ordered a new trial in part upon this ground.

"In the Kirk case it is reasonably probable that without knowledge of the indeterminate sentence law the jurors were led to believe erroneously by their examination of the Code the court could impose sentence for any fixed term not in excess of the maximum. The Kirk opinion intimates the decision upon this question might have been different if the jury had been informed of the indeterminate sentence law. 'Had their information been complete and accurate there might have been no prejudice * * *.' (Page 260 of 168 Iowa.)" Fagen Elevator v. Pfiester, 244 Iowa 633, 642, 643, 56 N.W.2d 577, 582.

VI. It is contended defendant did not receive a fair trial.

The contention is based on the claimed errors previously considered, adversely to defendant. We cannot agree defendant was denied a fair trial. We think his rights were fully protected and doubtful questions were resolved in his favor.

VII. Finally, we are urged to reduce the punishment to life imprisonment. As defendant's counsel conceded in oral argument, we have held we cannot reduce a death penalty fixed by a jury under Code section 690.5. This section leaves it solely to the jury to elect between the two permissible punishments for a jury finding of murder in the first degree. State v. O'Donnell, 176 Iowa 337, 347–350, 157 N.W. 870; State v. Griffin, 218 Iowa 1301, 1313, 254 N.W. 841; State v. Nutter, supra, 248 Iowa 772, 779, 81 N.W.2d 20, 24.

We are asked to reconsider these decisions. We feel they properly follow section 690.5 which provides the jury "must direct * * * whether the punishment shall be death or imprisonment for life" and the court "must enter judgment and pass sentence accordingly." 24 C. J. S., Criminal Law, section 1579c, page 549 (1961) states, "Where the jury are authorized to fix the punishment, the judgment or sentence must fix the punishment in accord with that assessed in the verdict, provided it is in conformity with the law."

The trial court obeyed the statutory command. Since we find it committed no error on the trial or other proceedings, we may not reduce the punishment.

The argument the death penalty is outmoded and barbaric is one for the legislature, not the courts, especially where the punishment, if found guilty of first-degree murder, is left to the jury. The argument is based in part upon the testimony of a criminologist from the University of Nebraska that there is no evidence the death penalty deters others from committing capital crimes. The argument may not be based upon any mitigating circumstances in defendant's conduct here for there are none.

Our duty is clear. The judgment is—Affirmed.

All JUSTICES concur.