**Randall N. STEINKUEHLER,**
**Applicant–Appellant,**

v.

**STATE of Iowa, Respondent–Appellee.**

No. 92–969.

Court of Appeals of Iowa.

Sept. 2, 1993.

Thomas R. Eller, Eller, Brink & Sextro, Denison, for appellant.

Bonnie J. Campbell, Atty. Gen., Bridget A. Chambers, Asst. Atty. Gen., Thomas Gustafson, County Atty., and Charles N. Thomas, Asst. County Atty., for appellee.

Considered by OXBERGER, C.J., and SCHLEGEL and SACKETT, JJ.

SACKETT, Judge.

Steinkuehler was convicted for first-degree murder for the shotgun killing of DeWayne Mohr. Steinkuehler's conviction was affirmed on direct appeal. In this postconviction relief action, Steinkuehler contends he was denied effective assistance of counsel in a number of particulars. We affirm.

Steinkuehler does not deny he shot DeWayne Mohr, the former husband of Steinkuehler's live-in girl friend. Steinkuehler contends, however, he was intoxicated at the time of the killing which should negate his criminal intent. The eleven challenges he made to his attorney's performance deal primarily with the manner the intoxication defense was presented.

■■■ To prevail on a claim of ineffective assistance of counsel, Steinkuehler must show he was denied reasonably effective assistance of counsel as guaranteed by the Sixth Amendment and that his right to a fair trial was prejudiced. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). Steinkuehler must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome. *Munz v. State*, 382 N.W.2d 693, 697 (Iowa App.1985). Steinkuehler has the burden to prove breach of an essential duty, *State v. Risdal*, 404 N.W.2d 130, 131 (Iowa 1987), and establish prejudice by proving there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *State v. Hildebrant*, 405 N.W.2d 839, 841 (Iowa 1987); *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

■■ The State agrees with Steinkuehler that the standard of review of a claim of ineffective assistance of counsel is de novo, *see Polly v. State*, 355 N.W.2d 849, 854 (Iowa 1984), and the issues raised in the appellate brief have been preserved for review.

Steinkuehler drank heavily on the day of the shooting. One hour after Steinkuehler shot Mohr, Steinkuehler turned himself in at the police station. Steinkuehler was jailed. Sharon Shields was working as a jailer at the time. When Steinkuehler turned himself in, he was advised of his right to remain silent and consult an attorney. When asked where the shotgun was, he said, "I'm a jealous son of a bitch." He was questioned. An attorney was not named to represent Steinkuehler until over a week later.

Before trial, Steinkuehler filed notice of an intoxication defense.

■■ Steinkuehler first contends his trial counsel should have examined Shields and Sheriff Stehr about pressure put on Shields to change her testimony about Steinkuehler's intoxication when jailed on the night of the shooting.

Prior to Steinkuehler's trial, Shields testified in a deposition she had a brief contact with Steinkuehler at the law enforcement center on the night of the offense. She said Steinkuehler appeared dazed and she smelled alcohol on his breath. She also testified Steinkuehler acted like he did not know what was going on. She said she knew Steinkuehler and had booked him into jail about three times. She said Steinkuehler looked at her like he did not even recognize her when he saw her and his face was just kind of blank and he did not show a lot of emotion and was dazed or disoriented. She testified Steinkuehler cried when he was told Mohr had died. Shields testified she believed Steinkuehler was drunk and his statement, if any, would be thrown out of court.

Shields testified that after her deposition, she received a letter from the county attorney regarding her deposition testimony and that a copy of that letter was sent to her employer. The letter was critical of her deposition testimony that she "could not understand how [Steinkuehler] could give a statement because [she] thought he was drunk and because he did not have an attorney." She testified that Sheriff Stehr then spoke to her about her testimony. Shields

alleged that Sheriff Stehr told her "he wasn't happy about my testimony. He asked me why I said—why I didn't say that I forgot." She testified that the sheriff went on to state that, "he forgets in court all the time."

At the postconviction hearing, Shields testified, in her opinion, the pressure she was feeling affected her trial testimony regarding Steinkuehler's intoxication. She stated that, "I felt like I had to measure my words and generally did not put very much emphasis on my testimony." She clarified by stating that, "I measured my words. I was more nervous. Basically that's it." Further, Shields testified she made every effort to resist the pressure she felt from the sheriff and she testified truthfully at trial.

Steinkuehler claims his trial attorney was ineffective because he failed to cross-examine Shields about this alleged pressure she received to forget what she had seen.

The State says Steinkuehler cannot show prejudice because Shields' trial testimony was identical to her deposition testimony.

Steinkuehler's trial attorney testified at the postconviction proceeding that he did not attempt to raise this issue at trial because he believed he had done a thorough job with respect to Steinkuehler's intoxication level and because Shields had required him to maintain a certain amount of confidentiality about the fact Shields had told the defense counsel about the pressure she perceived from the sheriff.

The State argues this tactic was reasonable because Shields had provided testimony helpful to the defense and testimony consistent with the testimony that she gave before she was allegedly pressured to change her testimony. Further, the decision not to cross-examine was a reasonable decision by defense counsel because had he chosen to disregard Shields' request he keep confidential the fact she had reported receiving pressure to change her testimony, Shields may have changed from a sympathetic witness to a hostile one. The State also argues Shields' possible reluctance to help Steinkuehler's defense would have been apparent from the fact she was employed by the sheriff's de-

partment and defense counsel could reasonably determine he had little to gain by raising the issue of whether the sheriff had pressured Shields to change her testimony regarding Steinkuehler's level of intoxication.

■ Defense attorney made a reasonable strategic decision. Where an attorney makes a reasonable strategic decision, even if it is not successful, we will not find the attorney ineffective. *See State v. Newman*, 326 N.W.2d 788, 795 (Iowa 1982).

■ Steinkuehler next argues his trial counsel was not effective because he did not impeach the testimony of the sheriff. Steinkuehler contends statements the sheriff allegedly made to Shields that the sheriff frequently forgets at trial when asked about factors unfavorable to the State and that he suggested Shields do the same should have been used to impeach the sheriff's testimony. The State advances Steinkuehler cannot show the failure to impeach the sheriff on this issue prejudiced him.

The sheriff testified at Steinkuehler's trial. First, the sheriff provided the foundation for introduction of a photograph of the murder weapon. He testified that on the night of the offense he went where the gun was said to be located and he was present when an officer found the gun. He identified two photographs that showed the location where the gun was found.

The sheriff also testified he ordered Steinkuehler held in the drunk tank the night of the shooting because he was concerned Steinkuehler might be suicidal and the area of the jail where the drunk tank is located is monitored and more secure than other areas. The sheriff testified on direct examination that Steinkuehler's level of intoxication did not enter into his decision to hold Steinkuehler in the drunk tank.

Defense counsel cross-examined the sheriff regarding signs of intoxication that he may have observed in Steinkuehler. The sheriff admitted on cross-examination that he could smell alcohol on Steinkuehler and he believed Steinkuehler had been drinking. The sheriff also admitted had he stopped Steinkuehler

while driving, he would have probably tested Steinkuehler for intoxication.

The State contends the cross-examination conducted was reasonably effective because the sheriff admitted he saw signs showing Steinkuehler might be intoxicated. The State notes during direct examination the sheriff did not claim to be unable to remember information, therefore, the State advances the court might not have let defense counsel cross-examine the sheriff regarding his alleged statement to Shields that he would frequently forget information when he testifies. The State also says Steinkuehler cannot demonstrate any prejudice as a result of defense counsel's decision not to raise the issue of the sheriff's statements to Shields.

A statement by the sheriff that he frequently forgets evidence when he testifies relates to his credibility and his honesty in conducting an investigation.

We have a serious problem with law enforcement personnel who may chose to forget their obligation to be truthful and fair. The confidence entrusted to law enforcement in our society demands that breaches of that confidence should not be tolerated. However, the issue before us is not whether the sheriff acted improperly, the issue is has Steinkuehler shown the required prejudice. We find he has not.

■ Steinkuehler contends his trial counsel should have made additional requests for instructions relating to the intoxication issue. First, Steinkuehler argues trial counsel should have requested a jury instruction stating the jury could consider Steinkuehler's intoxication in determining the weight to give to Steinkuehler's statement that, "I'm a jealous son of a bitch." Steinkuehler argues his alleged intoxication could have affected the jury's determination of the weight to be given that statement.

Defense counsel testified at the postconviction hearing he did not request an instruction regarding Steinkuehler's statement because he did not believe the statement amounted to a confession, and having an instruction relating to that statement would only draw attention to it. That strategy was reasonable, and we will not second guess trial counsel's decision. See *Newman,* 326 N.W.2d at 795.

■ Steinkuehler submits his trial attorney was not effective because he did not request a jury instruction that impairment due to intoxicants would never reduce first-degree murder to manslaughter but would reduce the crime to second-degree murder.

Trial counsel testified at Steinkuehler's postconviction hearing that he did not ask for an instruction like that now proposed by Steinkuehler because he thought without the instruction, the jury might find Steinkuehler guilty of manslaughter rather than either first-degree murder or second-degree murder. This was a reasonable tactic. *Newman,* 326 N.W.2d at 795.

Steinkuehler next argues Jury Instruction No. 25 did not say intoxication was a defense but only a material issue and, therefore, this instruction did not tell the jury what to do if it found Steinkuehler was so intoxicated at the time of the shooting he did not form requisite specific intent.

Jury Instruction number 25 stated:

[Randall] N. Steinkuehler has claimed that at the time and place of the commission of the offense he was intoxicated. The fact that a person is under the influence of intoxicants (drugs) does not excuse nor does it aggravate his guilt. However, intoxication may be shown where it is relevant to the person's specific intent at the time of the act charged.

However, even though a person is under the influence of an intoxicant, if he still possesses a mental capacity sufficient to form the intent requisite to the offense charged; or, if he has the intent present in his mind before he falls under the influence of the intoxicant and then commits the act, he will not be absolved of the responsibility for the act. Thus, intoxication is a material issue only when it produces a mental disability such as will render the person incapable of forming the intent which is an element of the offense charged.

In considering the question of [Steinkuehler's] intoxication, it should be considered along with all the other evidence in the case which bears on the question of specific intent which is explained in Instruction No. 23.

The issue of [Steinkuehler's] intoxication does not change or alter the burden resting upon the State to prove by evidence beyond a reasonable doubt that [Steinkuehler] was able to and did form the specific intent required.

Steinkuehler says the instruction should have told the jury intoxication was a defense. We disagree.

■ It is the rule in Iowa that while voluntary intoxication cannot constitute a defense to a crime, it may negate criminal intent if intent is an element of the crime charged. *State v. Caldwell*, 385 N.W.2d 553, 557 (Iowa 1986); *State v. Watts*, 244 N.W.2d 586, 590 (Iowa 1976); *State v. Linzmeyer*, 248 Iowa 31, 35, 79 N.W.2d 206, 208 (1956).

■ Steinkuehler also argues the words material issue used in the instruction, though taken from *State v. Collins*, 305 N.W.2d 434, 437 (Iowa 1981), failed to give the jury a clear understanding of the intoxication issue.

Steinkuehler also says the instruction did not direct the jury what to do if they found Steinkuehler was so intoxicated he could not form a specific intent. Steinkuehler advances the jury was not clearly directed that a finding of intoxication could mitigate the forming of the requisite specific intent necessary for a finding of first-degree murder. The question before us is not whether the instructions could have been more clearly drafted. The only question is whether Steinkuehler's attorney was ineffective in failing to request a clearer draft. The instructions conform closely to the uniform instructions. We affirm on this issue. Steinkuehler has not made the required showing on this issue to succeed on his ineffective assistance of counsel claim.

Steinkuehler next contends his trial attorney should have objected to the admission of the gun and photographs of the scene and victim.

We have carefully considered all arguments advanced by Steinkuehler on this issue and find Steinkuehler has not made the requisite showing his trial counsel was not effective.

■ Steinkuehler next contends his counsel should have raised the issue he was kept from seeing an attorney on the night of the shooting and, as a result, no chemical test was given to establish the extent of his intoxication.

Officer Schraeder testified at the postconviction hearing that the shooting was reported at about 9:30 p.m. and shortly after 9:30 p.m., Steinkuehler walked into the law enforcement center and Schraeder followed him. Schraeder said he then advised Steinkuehler of his right to an attorney and Steinkuehler did not ask to talk to an attorney at that time. At 10:07 that night, Steinkuehler talked to County Attorney Thomas Gustafson. That conversation was recorded and transcribed. At the beginning of the conversation, Gustafson asked Steinkuehler if he wished to speak with an attorney. Steinkuehler said he wanted to talk to his brother. Steinkuehler spoke to his brother, John, and asked him to contact attorney Steve Engelhardt. John phoned Engelhardt's home and talked to his wife and was told her husband was in California and she would contact him. John did not contact any other attorney.

A complaint was filed at about 3:00 a.m. on December 10, 1987. Steinkuehler was taken before a magistrate between 4:00 and 5:00 a.m. and made an application for a court-appointed attorney. The application was granted and the magistrate gave Steinkuehler a list of local attorneys. It was nearly ten days before an attorney was named to defend Steinkuehler. We affirm on this issue. Steinkuehler has failed to show the required prejudice to succeed on this claim.

■ Steinkuehler next contends his counsel should have objected to the amendment of the trial information eight days before trial. Steinkuehler was charged by a trial information with first-degree murder. His trial was set for March 22, 1988. Steinkuehler did not waive a speedy trial, although on March 10, 1988, Steinkuehler asked the trial

be continued and he executed a limited waiver of his speedy trial rights. Steinkuehler's trial was then set for May 17, 1988. On May 11, 1988, the State filed a motion to continue the trial. The county attorney's father had died May 2, 1988, and his mother had been hospitalized in Arizona since May 5. The county attorney contended he was primarily responsible for making his father's funeral arrangements and for providing for the care and treatment of his mother. The trial court granted a continuance and set trial for May 24, 1988.

On May 16, 1988, the State amended the trial information to include the original first-degree murder allegation and to add an alternative allegation that Steinkuehler committed first-degree murder under the felony-murder rule. The underlying felony for the felony-murder allegation was willful injury.

Steinkuehler argues his trial and appellate counsel were ineffective for failing to object to the State's amendment of the trial information eight days prior to trial. Trial counsel did object to the amendment on speedy trial grounds; however, this ground was not raised in Steinkuehler's direct appeal.

Iowa Rule of Criminal Procedure 4(8), in relevant part, states:

> The court may, on motion of the state, either before or during the trial, order the indictment amended so as to correct errors or admissions in matters of form or substance. Amendment is not allowed if substantial rights of the defendant are prejudiced by the amendment, or if a wholly new and different offense is charged.

Iowa R.Crim.P. 4(8)(a).

Iowa Rule of Criminal Procedure 4(8) is made applicable to amendment of trial information by Iowa Rule of Criminal Procedure 5(5). The amendment made by the State complies with the requirements of Rule 4(8). The trial court properly denied Steinkuehler's motion to dismiss the charge against him, and appellate counsel was not ineffective for failing to challenge on appeal the trial court's denial of Steinkuehler's motion to dismiss.

■ The amendment in the case at bar did not charge a wholly new or different offense and did not prejudice any substantial rights of Steinkuehler. Rule 4(8)(a) permits the State to amend an information by charging a different *means* of committing an offense. *State v. Williams,* 305 N.W.2d 428, 430 (Iowa 1981).

■ The decision whether to grant a continuance to allow defendant time to prepare after an amendment to a trial information is discretionary with the trial court. *State v. Schertz,* 330 N.W.2d 1, 3 (Iowa 1983). The court found no abuse of discretion where the trial court denied defendant's request for a continuance after the trial information charging first-degree kidnapping was amended three days prior to trial to add an additional alternative means of committing the offense. *Schertz,* 330 N.W.2d at 2–3. Similarly, the court has found no prejudice where a motion to amend the indictment was made ten days before trial and the motion was granted one week before trial. *State v. Brown,* 253 Iowa 658, 663, 113 N.W.2d 286, 289–90 (1962).

The facts to support the additional allegation did not change, and Steinkuehler's chosen defense of intoxication applied to the felony-murder alternative as well as the premeditated murder alternative as both are specific intent crimes. Steinkuehler was not prejudiced by the amendment. *See State v. Fuhrmann,* 257 N.W.2d 619, 624 (Iowa 1977).

We have carefully examined Steinkuehler's other challenges to the continuance and his counsel's failure to ask for an additional continuance and find them to be without merit.

Steinkuehler next contends defense counsel was ineffective for failing to raise the issue the submission of felony murder was barred under the merger doctrine.

■ The felony merger doctrine does not apply to felonious assaults. The legislature intended felonious assaults, including willful injury under section 708.4, be felonies that may serve as the basis of a felony-murder and that the merger doctrine discussed in *State v. Hinkle,* 229 N.W.2d 744, 750 (Iowa 1975), not apply to such assaults. *State v. Beeman,* 315 N.W.2d 770, 776–77 (Iowa 1982). The felony-murder statute does not preclude using willful injury as the un-

derlying felony. *State v. Ragland*, 420 N.W.2d 791, 793 (Iowa 1988). Defense counsel was not ineffective for failing to raise this issue in the trial court.

 Steinkuehler next contends defense counsel was ineffective for failing to argue if felony-murder was to be submitted to the jury, then the lesser-included offenses of willful injury should also have been submitted.

Trial counsel was not ineffective for failing to argue in the trial court if felony-murder was to be submitted to the jury, then the lesser-included offenses of the underlying felony if willful injury also should have been submitted. The court has held the felony underlying a felony-murder charge is not a lesser-included offense of felony-murder. *State v. Walters*, 426 N.W.2d 136, 141 (Iowa 1988); *State v. Aswegan*, 331 N.W.2d 93, 98 (Iowa 1983). Therefore, the trial court had no duty to submit the crime of willful injury to the jury. Because it would have been improper to submit willful injury to the jury, it would also be improper to submit the lesser-included offenses of willful injury. *Aswegan*, 331 N.W.2d at 98. Defense counsel was not ineffective for failing to raise a futile claim. *Hildebrant*, 405 N.W.2d at 841.

Steinkuehler next contends defense counsel was ineffective for failing to argue the jury instructions did not distinguish general intent from specific intent.

 Steinkuehler argues the jury instructions used in this case were confusing. Specifically, Steinkuehler asserts the instructions fail to distinguish specific intent from general intent. The instructions used by the trial court in this case are Uniform Jury Instructions. We will only reluctantly disapprove the instructions. *State v. Doss*, 355 N.W.2d 874, 881 (Iowa 1984). An examination of the jury instructions in this case shows the instructions are clear as to which crimes are specific intent crimes and which are general intent crimes. Therefore, defense counsel did not render ineffective assistance of counsel when he failed to object to the jury instructions on this ground.

 Steinkuehler's last contention is defense counsel was ineffective for failing to raise the issue the totality of the errors alleged denied Steinkuehler a fair trial.

The evidence of Steinkuehler's guilt was very strong. Several witnesses observed Steinkuehler shoot Mohr at close range. The victim in this case was the former husband of the woman Steinkuehler was living with at the time of the offense. There was also evidence that on the night Steinkuehler shot Mohr, Mohr had spent several hours with Steinkuehler's girl friend in local taverns. Mohr had also accused Steinkuehler of mistreating Steinkuehler's girl friend, and told him his girl friend wanted him to move out of her apartment. Mohr also told Steinkuehler he would be over to assist Steinkuehler in moving out of the apartment. In light of this evidence, Steinkuehler cannot demonstrate the outcome of his trial was changed as a result of the alleged breaches of duty of his trial and appellate attorneys.

**AFFIRMED.**

OXBERGER, C.J., concurs.

SCHLEGEL, J., dissents.

SCHLEGEL, Judge (dissenting).

I respectfully dissent.

I believe the failure of defense counsel to bring out the sheriff's admission that he falsifies evidence because "he forgets in court all the time," and the county attorney's letter critical of Shields' deposition testimony with a copy to her employer was ineffective assistance of trial counsel and was prejudicial. Furthermore, such conduct by both the sheriff and the county attorney should be sternly condemned. Since the jury was not told of this pressure upon Shields, it was deprived of evidence bearing upon the intoxication defense being asserted.

I believe there was a failure of defense counsel to provide effective assistance in this respect which resulted in prejudice to the defendant. I would reverse for a new trial. I would hope that doing so would send the message that questionable conduct by law enforcement officials and prosecutors, which constitutes a violation of the law, will be

subjected to strict scrutiny in cases of improper acts in the suppression of truth.