Thomas A. MUNZ, Petitioner-Appellant,

v.

STATE of Iowa, Respondent-Appellee.

No. 84–1109.

Court of Appeals of Iowa.

Dec. 18, 1985.

Thomas A. Munz, pro se, and Brad J. Brady of Crawford, Sullivan, Read & Roemerman, Cedar Rapids, for petitioner-appellant.

Thomas J. Miller, Atty. Gen., Rebecca L. Claypool, Asst. Atty. Gen., and G. Kent Renegar, Asst. Co. Atty., for respondent-appellee.

Heard by SNELL, P.J., and SCHLEGEL and HAYDEN, JJ.

SNELL, Presiding Judge.

In 1982 Munz pled guilty to a charge of sexual exploitation of children in violation of Iowa Code section 728.12 (1981) pursuant to a plea bargain under which other charges were dropped. No motion in arrest of judgment was filed. His direct appeal of his conviction was dismissed by the Iowa Supreme Court on the ground that the appeal was frivolous. The court stated in its order of dismissal, "After examining the record, we agree with counsel that there is no ground for reversal of defendant's conviction and sentence. Accordingly, defendant's court-appointed counsel is hereby permitted to withdraw, and the appeal is hereby ordered dismissed pursuant to Iowa R.App.P. 104, without prejudice to defendant's right to raise the issue of trial counsel's effectiveness in postconviction relief proceedings under Iowa Code Chapter 663A." After Munz filed his application and amended application for postconviction relief, the State sought summary dismissal of the application which was granted pursuant to Iowa Code section 663A.6 (1983). *See State v. Munz*, No. 69261 (Iowa Supreme Court, March 10, 1983).

On appeal, petitioner asserts that his application for postconviction relief raises ma-

terial issues of fact and, therefore, the court erred by granting the State's motion to dismiss.

■ Iowa Code section 663A.6 (1985) provides that "The court may grant a motion by either party for summary disposition of the application, when it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." The principles underlying our summary judgment procedure, Iowa R.Civ.P. 237–40, also apply to summary dispositions under the postconviction procedures of chapter 663A. *Boge v. State*, 309 N.W.2d 428, 430 (Iowa 1981).

On the other hand, "we find no need for the trial court to afford petitioner a hearing on allegations which directly contradict the record, unless some minimum threshold question of credibility appears." *Id.* Thus, whether a genuine issue of material fact exists so as to preclude summary disposition turns on whether reasonable minds could draw different inferences and reach different conclusions from them." *State v. Boge*, 252 N.W.2d 411, 414 (Iowa 1977).

**I. Guilty Plea.** Munz argues that the postconviction court erred by dismissing his contention that his guilty plea was not voluntarily and intelligently made. Munz's contention is that he could not have intelligently and voluntarily entered a guilty plea because during the plea hearing he was under the influence of a psycho-depressant drug administered by the jail nurse. He contends that the jail records would verify his claim and the postconviction court's denial of his discovery request foreclosed adequate development of this evidentiary support for his claim.

■ The State asserts that Munz is precluded from challenging the voluntariness of his guilty plea because this issue was conclusively determined by the Iowa Supreme Court's dismissal of his direct appeal. The State relies on Iowa Code section 663A.8 (1983) which provides that any ground finally adjudicated "in the proceeding that resulted in the conviction or sentence, or in any other proceeding the applicant has taken to secure relief, may not be the basis for a subsequent application."

The court dismissed Munz's direct appeal pursuant to Iowa R.App.P. 104. This dismissal was initiated by Munz's counsel. Munz was notified and resisted dismissal in a timely manner. The Iowa Supreme Court, when faced with a situation in this procedural posture, held "that a rule 16 (now R.App.P. 104) dismissal which is contested or objected to by the appellant does not prevent issues which could have been presented upon direct appeal from being embraced in a petition for postconviction relief under § 663A.8." *Stanford v. Iowa State Reformatory*, 279 N.W.2d 28, 34 (Iowa 1979). The court reasoned, "For this court to bind an appellant to an action taken by his counsel in derogation of his instructions of which this court has knowledge, would be to establish or maintain an unreasonable procedural bar to postconviction relief. If the initial order to dismiss was accurate and the appeal is frivolous, it would take little time to resolve. If there is merit to petitioner's ground, then he or she should not be bound by a dismissal to which a timely objection was made." *Id.*

Therefore, we conclude that the dismissal of the direct appeal poses no bar to Munz's claim for postconviction relief.

The State also asserts that challenges to a guilty plea must first be raised in a motion in arrest of judgment in order to raise that issue on appeal. Iowa R.Crim.P. 8(2)(d) provides that "The court shall inform the defendant that any challenges to a plea of guilty based on alleged defects in the plea proceedings must be raised in a motion in arrest of judgment and that failure to so raise such challenges shall preclude the right to assert them on appeal." Iowa R.Crim.P. 23(3)(a) defines a motion in arrest of judgment as "an application by the defendant that no judgment be rendered on a finding, plea, or verdict of guilty." Rule 23(3)(a) also reiterates that

"A defendant's failure to challenge the adequacy of a guilty plea proceeding by motion in arrest of judgment shall preclude his or her right to assert such challenge on appeal."

The purpose of rules 8(2)(d) and 23(3)(a) is to allow the trial court to correct defects in guilty plea proceedings before an appeal and thus eliminate the necessity for an appeal. *Wenman v. State*, 327 N.W.2d 216, 216 (Iowa 1982).

We have consistently held that unless the trial court failed to address the defendant as required by Iowa R.Crim.P. 8(2)(d), we would not review the validity of a guilty plea in the absence of a rule 23(3)(a) motion in arrest of judgment. *State v. Lucas*, 323 N.W.2d 228, 230 (Iowa 1982). The record in this case shows that the court did meet this requirement at the end of the guilty plea proceeding:

THE COURT: Now, in connection with your guilty plea, if you believe there are any defects in these plea proceedings, you have a right to challenge the guilty plea and you do that in a Motion In Arrest of Judgment, and if you wished to challenge your guilty plea because of any defects that's the way you have to do it, and you must do that by filing a Motion In Arrest of Judgment within five days of your sentence date and in no event later than forty-five days from today. If you fail to raise any such defects in a Motion In Arrest of Judgment, you would not be able to raise them if you later appealed your case, you won't be able to raise them on an appeal.

Furthermore, in the instant case, the record shows the following colloquy during sentencing:

THE COURT: Mr. Munz, did you understand that you had a right to file a Motion in Arrest of Judgment prior to today?

THE DEFENDANT: Yes, your Honor, I did.

THE COURT: Did you do that?

THE DEFENDANT: No, I did not, your Honor. I discussed that with my

present Attorney, Mr. Meyer, and he advised against it.

\*      \*      \*      \*      \*      \*

THE COURT: Is that what you did, Mr. Meyer?

MR. MEYER: Yes, your Honor. Upon reviewing all of the information available to me in the Trial Information and talking with Mr. Munz and considering the nature of the plea and the plea bargain that was entered into, I advised him that it was my judgment in his best interests to proceed with sentencing on the plea that had been entered.

\*      \*      \*      \*      \*      \*

THE COURT: Well, the Court is satisfied that this Defendant on legal advice has not filed a Motion in Arrest of Judgment and we should proceed with sentencing.

From the court's statement and its colloquy with Munz, it is obvious that the court advised defendant of the necessity of a motion in arrest of judgment and the record indicates that Munz affirmatively showed his understanding of the necessity of filing such a motion and the consequences of his decision not to do so.

Because defendant was informed by the trial court as to the necessity of filing a motion in arrest of judgment, there is no basis for suspending the application of rule 23(3)(a) unless defendant's failure to move in arrest of judgment resulted from ineffective assistance of counsel. *State v. Schoelerman*, 315 N.W.2d 67, 71 (Iowa 1982). "When a claim of ineffective assistance of counsel is made, we have allowed an exception to the general rule of error preservation." *Lucas*, 323 N.W.2d at 232. "Because these claims (realistically) are not made by attorneys against their own actions, we have allowed the suspension of rule 23(3)(a)." *Id.*

While most of Munz's allegations are couched in terms of ineffective assistance of counsel, the attack on the validity of his guilty plea appears to be on the merits. However, in his amended application for postconviction relief, Munz contends that

his trial counsel rendered ineffective assistance by refusing to enter a motion in arrest of judgment despite various defects in the plea proceedings.

Because the applicant proceeding pro se is entitled to a liberal construction of his pleadings, we will examine Munz's claim in terms of ineffective assistance of counsel, and the lack of a motion in arrest of judgment poses no bar to such consideration.

■ When a defendant relies on a specific act or omission to prove ineffective assistance of counsel, two conditions must be demonstrated: 1) counsel failed to perform an essential duty, and 2) prejudice resulted therefrom. *State v. Miles*, 344 N.W.2d 231, 234 (Iowa 1984). The ultimate test is whether under the entire record and totality of the circumstances counsel's performance was within the range of normal competency. *Meier v. State*, 337 N.W.2d 204, 206 (Iowa 1983); *Hinkle v. State*, 290 N.W.2d 28, 30 (Iowa 1980).

The test for ineffective assistance was most recently set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In that case, the Court stated: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Id.* at ——, 104 S.Ct. at 2068, 80 L.Ed.2d at 698 (1984). The defendant must satisfy this burden by a preponderance of the evidence and rebut the presumption of counsel's competence. *Meier*, 337 N.W.2d at 206.

Ordinarily, when allegations of ineffective assistance are raised in an application for postconviction relief, an evidentiary hearing on the merits of the complaints will be required. *Kyle v. State*, 322 N.W.2d 299, 308 (Iowa 1982); *Watson v. State*, 294 N.W.2d 555, 556 (Iowa 1980). The Iowa Supreme Court in *Watson* explained the basis for this policy which applies in the case at bar: "Such a hearing affords the parties an opportunity to adversarily develop all of the relevant circumstances and

considerations which may be pertinent but are not a part of the criminal trial record. (citations omitted)." *Id.* at 556.

Furthermore, this policy is directly in line with our practice in handling direct appeals which raise allegations of ineffective assistance. The Iowa appellate courts frequently reserve, as the supreme court specifically did in this case, issues of ineffective assistance of counsel for postconviction proceedings. *E.g., State v. Williams*, 285 N.W.2d 248, 271 (Iowa 1979), cert. denied, 446 U.S. 921, 100 S.Ct. 1859, 64 L.Ed.2d 277 (1980); *State v. Connell*, 275 N.W.2d 197, 205–06 (Iowa 1979); *State v. Coil*, 264 N.W.2d 293, 296 (Iowa 1978).

Here, Munz's allegation of ineffective assistance concerns his trial counsel's failure to file a motion in arrest of judgment. He alleges that his counsel knew or should have known of medication administered to him in jail and a suicide attempt which called into question the voluntariness of his plea. The postconviction court also refused to rule on Munz's pro se discovery request for jail records which would undoubtedly be of assistance in determining the validity of Munz's claim.

■ This allegation taken in the light most favorable to Munz, raises a material issue of fact with regard to the propriety of counsel's failure to move for an arrest of judgment. Munz's assertion, even if deemed improbable by the postconviction court, requires that he be allowed to present whatever proof he may have to support the claim. *See Kyle*, 322 N.W.2d at 303, 308 (allegations of ineffective assistance raised material issues of fact); *Watson*, 294 N.W.2d at 557 (allegation of insufficient pretrial discovery raised material issue of fact); *Boge*, 252 N.W.2d at 414 (allegations of confused mental state during plea proceedings caused in part by medication raised material issue of fact).

■ The State argues that because the guilty plea colloquy shows Munz responded coherently and rationally to the court's questions, any medication he might have been given is of no relevance. The United

States Supreme Court in *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), addressed a similar allegation. In *Sanders*, the petitioner filed a pro se motion in federal court seeking relief from his sentence alleging that he was mentally incompetent at trial and sentencing as a result of narcotics administered to him while he was in jail. The court dismissed his motion without hearing. On appeal, the Supreme Court reversed the dismissal and remanded for an evidentiary hearing on the petitioner's claim. The Court reasoned:

> However regular the proceedings at which he signed a waiver of indictment, declined assistance of counsel, and pleaded guilty might appear from the transcript, it still might be the case that petitioner did not make an intelligent and understanding waiver of his constitutional rights.

*Id.* at 19–20, 83 S.Ct. at 1079, 10 L.Ed.2d at 164. Following *Sanders*, we cannot agree with the State's interpretation that Munz's claim is directly contradicted by the guilty plea colloquy. If Munz was under the influence of medication it would not necessarily be apparent from his monosyllabic responses to the court's questions.

Munz has pled sufficient facts to generate material issues of fact on this ground of ineffective assistance of counsel. Therefore, the postconviction court erred in summarily dismissing Munz's application and the case must be remanded for an evidentiary hearing on the merits of Munz's claim.

**II. Search Warrant Claims.** Another ground of ineffective assistance which Munz argues should warrant postconviction relief is that trial counsel failed to challenge the form, issuance, and execution of the search warrant. The postconviction court dismissed Munz's claim because it found the search warrant to be valid as a matter of law. Munz contends specifically that the following list of items comprises reasons why the search warrant was invalid and should have been challenged: A) the warrant was a general warrant and the execution of the warrant exceeded its scope; B) there was no basis for finding probable cause to issue the warrant because the informant's statements were not corroborated; C) there was no information concerning the timing of the informant's observations in the affidavit for search warrant; D) there was no showing of a nexus between the items to be seized and the commission of criminal activity and the place to be searched; E) the affidavit of Detective Parr contained material misrepresentations of fact; and F) the warrant did not exist at the time of the search. Therefore, Munz argues these constitute genuine issues of fact precluding summary dismissal.

The validity of a search warrant is tested by well established principles. A warrant may only be issued upon a finding of probable cause. *State v. Post*, 286 N.W.2d 195, 199 (Iowa 1979). The standard for issuing a search warrant is

> whether a person of reasonable prudence would believe a crime was being committed on the premises to be searched or evidence of a crime was being concealed there.... The facts must establish probable cause that the crime or evidence is presently being committed or concealed at the place to be searched and cannot merely establish that there was probable cause at some time in the past.

*Id.* at 196. Only the facts presented to the magistrate when the warrant was issued are considered on review. *State v. Drake*, 224 N.W.2d 476, 478 (Iowa 1974). The fourth amendment does not deny the Information for Search Warrant the support of the usual inferences which reasonable men draw. *State v. Seiler*, 342 N.W.2d 264, 267 (Iowa 1983). In light of these general principles we evaluate each of Munz's claims.

**A. General Warrant.** Munz claims that the search warrant lacked specificity thereby rendering it invalid as a general warrant and that counsel was ineffective for not challenging it. The warrant stated that the items to be searched for were "Photographs of Janice Stovers and Thomas Munz."

The fourth amendment requires that search warrants describe the objects to be seized with particularity. *Coolridge v. New Hampshire,* 403 U.S. 443, 467, 91 S.Ct. 2022, 2038–39, 29 L.Ed.2d 564, 583 (1971). This requirement avoids the "general, exploratory rummaging in a person's belongings" which a general warrant would allow. *Id.* However, "the requirements for warrants are practical and not abstract.... Elaborate specificity is not required." *State v. Bakker,* 262 N.W.2d 538, 545 (Iowa 1978). Furthermore, "where the precise identity of goods cannot be ascertained at the time the warrant is issued, naming only the general class of items will suffice because less particularity can be reasonably expected than for goods (such as those stolen) whose exact identity is already known at the time of issuance." *United States v. Johnson,* 541 F.2d 1311, 1314 (8th Cir.1976). Significant evidence relating to a crime under investigation is subject to seizure. *State v. Hall,* 235 N.W.2d 702, 717 (Iowa 1975), *appeal after remand* 249 N.W.2d 843 (Iowa 1977) *cert. den.* 434 U.S. 822, 98 S.Ct. 66, 54 L.Ed.2d 79 (1977).

■ In this case, the objects to be seized were photographs of the victim and Munz. We are called upon to determine whether this description was "so broad and vague it necessarily clothed the warrant-executing officers with interdicted discretion regarding items to be seized." *See State v. Hamilton,* 236 N.W.2d 325, 328 (Iowa 1975) (held warrant authorization of search for "any and all controlled substances" not general warrant).

We conclude that the items to be searched for and seized in this case were as sufficiently identified as the situation permitted. The victim could not individually describe each photograph. She simply knew such photographs existed because Munz had briefly showed them to her and threatened to show them to the authorities.

■ Munz also contends that because the victim indicated in her affidavit that the photographs were in a photo album in a locked black briefcase, the search should have been so limited. What Munz's argument ignores is that photographs, not the briefcase, were the object of the search. Given the inherent ease with which photographs can be moved from place to place, it was reasonable for the warrant to be issued without restricting the search solely to a briefcase. Furthermore, "if a warrant sufficiently describes the premises to be searched, this will justify a search of those personal effects found therein and belonging to the person occupying the premises if those effects might contain the described items." 2 W. LaFave, *Search and Seizure* § 4.10(b) at 154 (1978). Therefore, even if the warrant-executing officers did in fact search jars and canisters of foodstuffs, as Munz alleges, these were legitimate locations to be searched given the size of the objects to be seized. Under these circumstances, the search warrant was not subject to attack on the ground of generality nor did the search exceed the scope of the warrant. Therefore, no issue of fact was generated regarding trial counsel's failure to challenge the warrant on this ground.

**B. Informant Reliability.** Munz claims that the search warrant was defective because it was based on uncorroborated statements of an informant which were not shown to be reliable.

The United States Supreme Court in *Illinois v. Gates,* 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527, 543 (1983), established that the "totality-of-circumstances" relayed in an affidavit must give rise to probable cause. While acknowledging that an informant's veracity, reliability, and basis of knowledge are highly relevant in determining the value of his report, the Court found that these elements are not "entirely separate and independent requirements to be rigidly exacted in every case.... Rather ... they should be understood simply as closely intertwined issues that may usefully illuminate the common sense, practical question whether there is "probable cause" to believe that ... evidence is located in a particular place." *Id.* In discussing the various indicia of reliability which interplay in the assessment of the

"totality of the circumstances," the Court stated "[I]f an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability—we have found rigorous scrutiny of the basis of his knowledge unnecessary." *Id.* at 233–34, 103 S.Ct. at 2329, 76 L.Ed.2d at 545.

Likewise, the Iowa Supreme Court has long recognized the difference between paid informants and citizen informants regarding reliability for purposes of probable cause determinations. In *State v. Drake*, 224 N.W.2d 476 (Iowa 1974), the court concluded:

> When considering the sufficiency of probable cause based on information supplied by an informant, it is important to distinguish the police tipster, who acts for money, leniency, or some other selfish purpose, from the citizen informer, whose only motive is to help law officers in the suppression of crime.
>
> In the former the information furnished is less likely to be truthful, and it is therefore subjected to much closer scrutiny as to the surrounding circumstances reflecting on its credibility. As part of this scrutiny, the informant's prior reliability must ordinarily be demonstrated. In the latter the rule of prior reliability is considerably relaxed for several reasons. In the first place the citizen informer has rarely had any earlier experience in reporting suspected criminal activity. Furthermore, unlike the professional informant, he is without motive to exaggerate, falsify or distort the facts to serve his own ends.
>
> Reliability still must be shown, but it may appear by the very nature of the circumstances under which the incriminating information became known. Any other rule would lead to the totally unacceptable result that public-spirited citizens interested only in law enforcement could seldom furnish information sufficient to establish probable cause.

*Id.* at 478. Several years later in *State v. Post*, 286 N.W.2d 195, 200 (Iowa 1979), the Iowa Supreme Court again stated that "the reliability of a citizen informant may be shown by the very nature of the circumstances under which the incriminating information became known."

The informant in this case was the thirteen-year-old victim of the crime. She related what she had personally experienced and observed. Furthermore, a police officer confirmed that Munz was registered in two motels on the dates in question. This confirmation corroborated the victim's statement that it was in these motels that the sexual acts occurred. By its very nature, the reliability of the victim's information was established. Therefore, probable cause existed for issuance of the search warrant and no material issue of fact is raised by trial counsel's failure to challenge the warrant on this ground.

**C. Timeliness of Informant's Observations.** Munz next alleges that his counsel was ineffective for failing to challenge the search warrant on the ground that it lacked information concerning the timing of the informant's observations. "The proof of probable cause which must be made before a search warrant may be issued must be of facts so closely related to the time of the issuance of the warrant as to justify a finding of probable cause at that time, and whether the proof meets this test must be determined by the circumstances of each case." *State v. Bean*, 239 N.W.2d 556, 559 (Iowa 1976). Munz relies on the Iowa Supreme Court's statement in *State v. Hennon*, 314 N.W.2d 405, 406 (Iowa 1982), that "[I]f the timeliness of the informant's observations cannot be ascertained from the affidavit, probable cause for the search has not been shown." The court, then, continued, "The failure of an affidavit to specify the date of an informant's observations is not always fatal to the warrant, however. Other recitals in the affidavit may show the information is timely. One factor which has sometimes influenced courts to find timely probable cause is the use of the present tense in affidavits. (citations omitted)." *Id.* at 407. An additional circumstance which demonstrates the timeliness

of information that forms the basis for a warrant is the inherent nature of the crime.

> In general, the basic criterion as to the duration of probable cause is the inherent nature of the crime. The Circuits hold that where an affidavit recites a merely isolated violation then it is not unreasonable to believe that probable cause quickly dwindles with the passage of time. On the other hand, if an affidavit recites activity indicating protracted or continuous conduct, time is of less significance.

*Post,* 286 N.W.2d at 201 (quoting *Bastida v. Henderson,* 487 F.2d 860 (5th Cir.1973)); *see also State v. Birkestrand,* 239 N.W.2d 353, 359 (Iowa 1976) (reasonable time lapse does not preclude search warrant issuance where continuing illegal activity is portrayed to magistrate).

■■■ In this case, the victim's statements given to police on April 6, 1982, indicated that the victim was repeatedly sexually abused by Munz for over a two-year period. She further specifically detailed acts of sexual abuse against her on March 31 and April 5, 1982. She reported that Munz continually threatened to turn over photographs of their sexual activities if she went to the police. She also stated, "I know that he has quite a few pictures which he keeps in an album in a locked black briefcase." The search warrant was issued for these photographs on April 7, 1982.

We conclude that the lack of the specific dates when the photographs were taken or when the victim saw them in Munz's possession is not material due to the continuous nature of the criminal conduct in issue. We hold that the information regarding the timing of Sover's observations was not so remote from the time of application for issuance of the warrant as to invalidate it for lack of probable cause. Therefore, no material issue of fact is raised by trial counsel's failure to challenge the warrant on this basis.

■■■ **D. Nexus between Photographs and Apartment.** Munz argues that the search warrant is invalid due to a lack of

nexus between criminal activity, the objects to be seized, and the place to be searched and, therefore, trial counsel was ineffective for failing to challenge the warrant on this ground.

> Probable cause to search, in contrast to probable cause to arrest, requires a probability determination as to the nexus between criminal activity, the things to be seized, and the place to be searched....
>> Even if there is probable cause—or even absolute certainty—that certain described items are presently to be found in a certain described place, a lawful basis for search has not been established unless it is also shown to be probable that those items constitute the fruits, instrumentalities, or evidence of crime. In the absence of such a showing, the described items are not a legitimate object of a search.... Mere suspicion that the objects in question are connected with criminal activity will not suffice.

*State v. Seager,* 341 N.W.2d 420, 427 (Iowa 1983) (quoting 1 LaFave, *Search and Seizure* § 3.7 at 704–05 (1978)). "That nexus can be found by considering the type of crime, the nature of the items involved, the extent of the defendant's opportunity for concealment, and the normal inferences as to where the defendant would be likely to conceal the items." *State v. Groff,* 323 N.W.2d 204, 212 (Iowa 1982).

In the present case, there is no question that the information for the search warrant and accompanying victim's statement establish probable cause to believe that a crime was committed and probable cause to believe that the items sought to be seized, i.e., photographs, were located at the premise sought to be searched. It is reasonable to infer that a person would keep the photographs in his residence or automobile.

Furthermore, nude photographs of a thirteen-year-old female having sexual relations with an adult male constitute evidence of the crime of Sexual Exploitations of a Child. Without a doubt, the nexus is sufficient between the photographs to be seized and the established criminal activity.

We conclude that Munz's contention as to probable cause is without merit, counsel was not ineffective for failing to attack the warrant on the ground of lack of nexus, and, therefore, no material issue of fact is raised requiring an evidentiary hearing.

**E. Misrepresentations in Affidavit.** Munz further asserts that his trial counsel was ineffective for failing to challenge the validity of the search warrant and the arrest warrant on the ground that the affidavit of the investigating officer who applied for the warrant contained material misrepresentations of fact.

The United States Supreme Court in *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667, 672 (1978), held:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary for the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

The Court explained the nature of the required preliminary showing to necessitate a hearing on a motion to suppress as follows:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. *To mandate an evidentiary hearing the challenger's [preliminary showing] must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.* They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished or their absence satisfactorily explained. Allegations of negligence or innocent

mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue. *Id.* at 171–72, 98 S.Ct. at 2684–85, 57 L.Ed.2d at 682 (emphasis added).

The Iowa Supreme Court has applied this reasoning in several cases. *See, e.g., State v. Boyd,* 224 N.W.2d 609 (Iowa 1974) (defendant is entitled to evidentiary hearing on truth of affidavit only after preliminary showing under oath that affiant included false statements); *Post,* 286 N.W.2d at 201–02 (prima facie showing of intentional falsehood in affidavit entitles defendant to evidentiary hearing on veracity issue).

Munz failed to come forth with a preliminary offer of proof by sworn affidavits or statements of witnesses to call into question the investigating officer's veracity. Moreover, the Information for Search Warrant submitted by Detective Parr is consistent with the written statement given by the victim. Therefore, Munz's contention is directly contradicted by the record.

We conclude that no genuine issue is raised regarding trial counsel's ineffectiveness in failing to investigate the veracity of Detective Parr's representations in the Information for Search Warrant.

**F. Existence of Warrant at Search.** Munz also claims that he was denied effective assistance by trial counsel's failure to investigate his allegations that no search warrant existed at the time of the search.

The application for search warrant was subscribed and sworn before a notary public on April 7, 1982. The warrant itself was issued by the magistrate on April 7, 1982. The return of service indicates that Detective Parr received the warrant on April 7, 1982 and that he searched the described premises on April 7, 1982.

The allegation of Munz that no search warrant existed at the time of the search is directly contradicted by the record and fails to raise a material issue of fact. *See Boge,* 252 N.W.2d at 414 (no minimum threshold question of credibility appears where petitioner's allegation is directly contradicted by the record).

**III. Arrest Warrant Validity.** Munz also claims that he was rendered ineffective assistance of counsel due to counsel's failure to raise the argument of lack of probable cause to issue the arrest warrant. He argues that the arrest warrant issued solely on the conclusions of the assistant county attorney without other incorporated testimony.

Iowa Code section 804.1 (1983) provides that:

> A criminal proceeding may be commenced by the filing of a complaint before a magistrate. When such complaint is made, charging the commission of some designated public offense in which such magistrate has jurisdiction, *and it appears from the complaint or from affidavits filed with it that there is probable cause to believe an offense has been committed and a designated person has committed it,* the magistrate shall, except as otherwise provided, issue a warrant for the arrest of such person. (emphasis added)

In *State v. Thornton,* 300 N.W.2d 94, 96 (Iowa 1981), the Iowa Supreme Court concluded that "the requirement of section 804.1 is clear: the probable cause finding for issuance of an arrest warrant must be based upon the complaint or accompanying affidavits." In this case, the magistrate was presented with a complaint accompanied by the affidavit of the investigating officer and the sworn statement of the victim. All of these were properly considered by the magistrate in making the probable cause determination. Sufficient facts were presented to establish probable cause to arrest Munz, and, therefore, trial counsel's failure to attack the arrest warrant on this basis does not constitute ineffective assistance.

We conclude that the dismissal of petitioner's application for postconviction relief is reversed on a limited ground. This cause is remanded for an evidentiary hearing solely on the ground that petitioner was under the influence of medication to the extent that his guilty plea was involuntary and his trial counsel rendered ineffective assistance by failing to challenge its validity.

REVERSED AND REMANDED.