STATE of Iowa, Plaintiff-Appellee,

v.

Lori Jean MALLOY,
Defendant-Appellant.

No. 86–249.

Court of Appeals of Iowa.

May 28, 1987.

Charles L. Harrington, Appellate Defender, and John P. Messina, Asst. Appellate Defender, for defendant-appellant.

Thomas J. Miller, Atty. Gen., Pamela Greenman Dahl, Asst. Atty. Gen., James

M. Metcalf, Black Hawk Co. Atty., and James D. Coil, Asst. Black Hawk Co. Atty., for plaintiff-appellee.

Heard by DONIELSON, P.J., and SNELL and SACKETT, JJ.

DONIELSON, Presiding Judge.

The defendant, Lori Jean Malloy, appeals from her conviction, following a bench trial, of murder in the first degree. The defendant contends that evidence seized from her apartment pursuant to a search warrant should have been suppressed because the warrant was unconstitutionally vague and general. We affirm.

The defendant was accused of first-degree murder for her alleged role in the death of her four-year-old daughter. Prior to trial, the defendant moved to suppress evidence seized in the initial search of her apartment, claiming that the search warrant acted upon was unconstitutionally general. The trial court denied the defendant's motion on November 8, 1985. The defendant waived her right to a jury trial and her bench trial began on December 2. On December 20, the trial court overruled the defendant's motion for new trial and sentenced her to life imprisonment.

On the morning of June 6, paramedics were summoned the defendant's home where they found her daughter Michelle wrapped in blankets and not breathing. The paramedics rushed Michelle to a hospital emergency room, where emergency efforts proved fruitless and she was pronounced dead. The emergency room physician's examination and a subsequent autopsy revealed that Michelle's body was virtually covered with burns, bruises, lacerations, and other injuries, both internal and external. Dr. Peter Stephens, a forensic pathologist, opined that there were over twenty-eight indications of nonaccidental injuries and violence to Michelle. He determined that her death was caused by either: (1) brain lesions caused by a blow to the rear of the head with a blunt instrument; or (2) liver lesions caused by the ninth rib being broken and shoved into the liver tissue by a blow to the right rib cage. The defendant claimed that any injuries suffered by Michelle were accidental.

Later that same morning, the police obtained a warrant to search the defendant's apartment. The warrant authorized the search of:

bedding; bed clothing; photgraphs [sic] and examination of the instrumentalities including the kitchen sink, bath tub, and water heater in the apartment. Clothing of the victim, any treatment materials, medicines or other medical supplies used to treat the injuries of the victim, Michelle Ann Malloy; evidence of instrumentalities which would substantiate abuse or neglect.

Pursuant to this search warrant, the police seized a large number of items, including prescription drugs, a yellow bean bag chair, rugs, blankets, clothing, toys, sheets, pillows, bedspreads, a metal kitchen knife, screwdrivers, and a toilet seat cover.

The defendant contends that the trial court erred in refusing to suppress evidence seized pursuant to this search warrant. She argues that the warrant was unconstitutionally general since it authorized the police to seize "evidence of instrumentalities which would substantiate abuse or neglect." She maintains that this language vested the searching officers with impermissibly broad discretion as to what areas could be searched and what items would be seized. She suggests that since almost any household item could be used in the "abuse or neglect" of a child, the warrant amounted to an authorization to search the entire apartment for any evidence of the alleged crime. The defendant asserts that this sort of blanket authorization is precisely the type of evil barred by the fourth amendment.

■ Generally, our scope of review concerning the admissibility of evidence is for the correction of errors at law only. Iowa R.App.P. 4. Where, however, a defendant raises issues of violation of basic constitutional safeguards, we are not bound by the trial court's ruling, but must make our own independent evaluation of the totality of the circumstances under which the ruling on those constitutional rights was made.

*Dickinson Co., Inc. v. City of Des Moines,* 347 N.W.2d 436, 439 (Iowa App.1984).

■ The fourth amendment to the Constitution of the United States provides that no warrants shall be issued absent probable cause and supported under oath and affirmation and also provides that such warrants shall not be issued unless such warrant particularly describes "the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. A major objective of this amendment is to prohibit the use of a "general" warrant and avoid "a general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire,* 403 U.S. 443, 467, 91 S.Ct. 2022, 2038–39, 29 L.Ed.2d 564, 583 (1971). The United States Supreme Court has recognized that under the fourth amendment, "[a] seizure reasonable as to one type of material in one setting may be unreasonable in a different setting or with respect to another kind of material." *Roaden v. Kentucky,* 413 U.S. 496, 501, 93 S.Ct. 2796, 2800, 37 L.Ed.2d 757, 763 (1973). However, "the requirements for warrants are practical and not abstract.... Elaborate specificity is not required." *Munz v. State,* 382 N.W.2d 693, 699 (Iowa App. 1985), *citing State v. Bakker,* 262 N.W.2d 538, 545 (Iowa 1978). Furthermore, "where the precise identity of goods cannot be ascertained at the time the warrant is issued, naming only the general class of items will suffice because less particularity can be reasonably expected than for goods ... whose exact identity is already known at the time of issuance." *United States v. Johnson,* 541 F.2d 1311, 1314 (8th Cir. 1976). Consequently, significant evidence relating to a crime under investigation is subject to seizure. *State v. Hall,* 235 N.W.2d 702, 717 (Iowa 1975), *appeal after remand* 249 N.W.2d 843 (Iowa 1977), *cert. denied* 434 U.S. 822, 98 S.Ct. 66, 54 L.Ed.2d 79 (1977); *Munz,* 382 N.W.2d at 699. *See also United States v. Santarelli,* 778 F.2d 609 (11th Cir.1985) (court upheld warrant authorizing seizure of "all property" constituting evidence of loansharking since exact identity of the evidence to be seized could not have been known at the time the warrant was issued); *United States v. Os-borne,* 630 F.2d 374 (5th Cir.1980), *cert. denied* 450 U.S. 934, 101 S.Ct. 1398, 67 L.Ed.2d 369 (1981) (court upheld warrant authorizing seizure of several described items and "any other evidence relating to the armed robbery"); *United States v. Dennis,* 625 F.2d 782 (8th Cir.1980) (court upheld a warrant authorizing the seizure of "certain books and records (or items of evidence)" relating to loansharking).

■ In the present case, the search warrant listed specific items of clothing, home appliances, and medicines to be seized and examined, and additionally authorized the search for "evidence of instrumentalities which would substantiate abuse or neglect." We are now called upon to determine whether the description was "so broad and vague it necessarily clothed the warrant-executing officers with interdicted discretion regarding items to be seized." *State v. Hamilton,* 236 N.W.2d 325, 328 (Iowa 1975) (court held warrant authorizing search for "any and all controlled substances" not a general warrant). We conclude that the items to be seized in the present case were as sufficiently identified as the situation permitted.

■ We initially note that a careful reading of the search warrant reveals that the final clause of the warrant follows an extended description of items of evidence to be seized, all pertaining to the alleged crime. Under such circumstances, a warrant will not be held to be vague or general. *Andresen v. Maryland,* 427 U.S. 463, 480–81, 96 S.Ct. 2737, 2748–49, 49 L.Ed.2d 627, 642–43 (1976). Additionally, given the nature of the crime and the number of different types of injuries the victim suffered, it would have been impossible for the officers to be more specific as to what type of evidence they were seeking. The autopsy revealed that the victim suffered more than twenty-eight indications of non-accidental injury and violence. According to the autopsy, there were two fatal injuries: (1) a laceration of the liver caused by a blow which fractured the child's ribs, and (2) an injury to the brain caused by a blow to the back of the head. The injuries cov-

ered virtually the child's entire body. It is therefore difficult to perceive how the police could have been any more explicit in describing the items to be seized considering the massive and varied injuries suffered by the victim.

Furthermore, even if we were to hold that the search warrant was vague and therefore evidence illegally seized, such an illegal seizure would not mandate reversal where the State has established the defendant's guilt by overwhelming evidence. *State v. Freeman,* 297 N.W.2d 363, 367 (Iowa 1980). In the present case, the defendant claimed that the injuries to the victim were accidental. The record, however, reveals that the defendant had previously been referred to child abuse authorities because of injuries to the victim. The defendant admitted that she had abused the victim. The victim had indicated to her foster mother that the defendant had hit her toes with a hammer and stabbed her hands with a fork. Medical testimony from the emergency room physician revealed that in the physician's opinion, the nature, number, variety, and distribution of the injuries could not have been caused by accidental means, which was corroborated by the physician who conducted the autopsy. There was simply overwhelming evidence that the injuries received by the victim were not accidental.

We conclude that the items seized, including the screwdrivers and hairbrush, were items which could have been linked to injuries to the victim's body and that they were seized pursuant to a valid search warrant. The trial court was therefore correct in denying the defendant's motion to suppress.

AFFIRMED.