# IN THE COURT OF APPEALS OF IOWA

No. 15-0439
Filed July 27, 2016

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**TYLER JEFFREY WEBBER,**
      Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Todd A. Geer (motion to correct illegal sentence), Andrea J. Dryer (appointment of counsel), and Kellyann M. Lekar (appointment of counsel), Judges.

A defendant appeals the denial of his motion to correct illegal sentence.

**WRIT SUSTAINED AND REMANDED FOR FURTHER PROCEEDINGS.**

Mark C. Smith, State Appellate Defender, and Vidhya K. Reddy, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Heard by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**TABOR, Judge.**

Tyler Webber appeals the denial of his motion to correct illegal sentence. He claims his lifetime parole is cruel and unusual punishment. *See* Iowa Code § 903B.1 (2005) ("sex offender special sentencing"). He also claims he should have been afforded a hearing and meaningful representation. The State claims Webber's sentence is not grossly disproportionate to his sexual-abuse offense.

After reviewing Webber's pro se motion, the underlying plea and sentencing record, and his arguments on appeal, we conclude the district court's summary denial of his claim was inappropriate. The district court should allow both Webber and the State an opportunity to present evidence before deciding if lifetime supervision is grossly disproportionate to the facts of Webber's offense.

Because the district court appointed counsel before the summary dismissal, we remand for a hearing at which Webber should have the benefit of the effective assistance of counsel. Finally, we do not consider the State's arguments that Webber was not entitled to appointed counsel because the State did not raise those challenges in the district court.[1]

I. **Facts and Prior Proceedings**

Because the circumstances of Webber's offense are relevant to his disproportionality claim, we recount them here. According to the minutes of testimony, Webber graduated from Waterloo Columbus High School in 2004. He

---

[1] We also do not address Webber's pro se challenge to the knowing and voluntary nature of his plea agreement incorporating the section 903B special sentence. That claim is outside the parameters of a motion to correct an illegal sentence. *See State v. Chadwick*, 586 N.W.2d 391, 393 (Iowa Ct. App. 1998).

met C.R. through two of his friends, A.A. and D.M.[2]  Nineteen-year-old Webber and fourteen-year-old C.R. interacted for a few weeks.  Webber was four years and six months older than C.R.  Webber and C.R. saw each other six times in person, in addition to texting and speaking on the phone.  According to the minutes, they developed a bond and discussed that they would have started dating if not for their age difference.

Webber had oral sex with C.R. two times in October 2005.  On a third occasion, October 28, 2005, they had sexual intercourse in A.A.'s bedroom.  A.A. became angry because she did not want them to have sex in her bed.  Webber offered A.A., who was a minor, a baggie of marijuana from his pocket to appease her.  C.R.'s mother learned of this incident and called law enforcement.  Webber and C.R. both admitted engaging in sex acts.

On November 21, 2005, the State charged Webber by trial information with two counts of sexual abuse in the third degree, class "C" felonies, in violation of Iowa Code section 709.4(2)(c)(4), based on his conduct of October 28.  The State also charged him with distribution of marijuana to a minor, a class "B" felony, in violation of Iowa Code section 124.406(1)(a).

In June 2006, the State and Webber reached an agreement in which he agreed to plead guilty to one count of third-degree sexual abuse and distribution of marijuana, in exchange for the State's dismissal of the other count of sexual abuse.  Under the plea bargain, the parties were free to argue for an appropriate sentence.  The court imposed a suspended prison term not to exceed ten years with two to five years of probation on the sex-abuse conviction.  He also received

---

[2] A.A. and D.M. were dating at the time.

a suspended term of incarceration not to exceed twenty-five years on the distribution conviction. The sentences were run consecutively, and he was placed on supervised probation.[3] Following a discussion between the State and defense counsel, the court determined Iowa Code section 903B became effective on July 1, 2005, and applied to Webber. After being informed of the ramifications of section 903B.1, Webber maintained his desire to plead guilty. The court then imposed the mandatory lifetime special sentence for the sex abuse charge.

Webber completed his underlying sentence on June 18, 2012. He then commenced lifetime parole supervision under section 903B.1.

On February 11, 2015, Webber filed a pro se motion to correct illegal sentence under Iowa Rule of Criminal Procedure 2.24(5)(a). The motion claimed the lifetime special sentence placed "gross disproportionality" on Webber and constituted cruel and unusual punishment under both the state and federal constitutions.[4] In his motion, Webber requested "an evidentiary hearing be set, with his participation on this matter where all facts and issues of this filing can be fully and fairly determined." Webber also filed a motion requesting counsel.

On February 17, 2015, the district court approved Webber's request for counsel and appointed the public defender's office to represent him. On February 19, the public defender withdrew based on an overload of cases and asked the district court to appoint different counsel for Webber. The next day,

---

[3] Webber was incarcerated in November 2007 on an unrelated charge.
[4] The motion to correct illegal sentence also alleged the supervision constituted double jeopardy; contravened Iowa Code section 902.9, which provides for a maximum ten-year term of incarceration on a class "C" felony; and violated the Ex Post Facto Clauses of the Iowa and Federal Constitutions as applied to conduct occurring before the effective date of section 903B.

February 20, the district court approved the withdrawal and appointed attorney Michael Lanigan. The order appointing attorney Lanigan was file stamped at 2:27 p.m. At 4:02 p.m., a different district court judge denied Webber's motion to correct illegal sentence without a hearing. The ruling stated, in its entirety:

> The court is presented with defendant's motion for correction of an illegal sentence filed February 11, 2015. Upon a review of said motion, the contents of the court file, and applicable law, the court determines that said motion should be and is hereby overruled.

Attorney Lanigan filed an appearance twelve days later, on March 4, 2015. The next day, March 5, Webber filed a pro se notice of appeal. On April 8, 2015, attorney Lanigan filed a motion to withdraw "on the grounds [he had] reviewed the file in this case as requested by the court and [found] no grounds to proceed further." The district court granted Lanigan's motion to withdraw the same day. The appellate defender's office was appointed to represent Webber in this appeal.

## II.     Appellate Jurisdiction

Before addressing the issues raised by Webber, we consider the State's contention we lack jurisdiction because the court's denial of Webber's post-judgment motion is not appealable as a matter of right. Following our recent resolution of the same claim in *State v. Dempsey*, we determine a petition for writ of certiorari is the proper form of review. No. 15-1195, 2016 WL 3275306, at *3 (Iowa Ct. App. June 15, 2016). Under Iowa Rule of Appellate Procedure 6.108, we treat Webber's notice of appeal and briefs as a petition for writ of certiorari, grant the writ, and proceed to address his constitutional claim.

When a certiorari action alleges a violation of constitutional rights, "we make an independent evaluation of the totality of the circumstances" and review de novo. *State v. Iowa Dist. Ct.*, 801 N.W.2d 513, 517 (Iowa 2011).

## III. Constitutionality of Lifetime Special Sentence Under Section 903B.1

Webber claims his lifetime special sentence of parole mandated by section 903B.1 constitutes cruel and unusual punishment under both the Iowa and Federal Constitutions. *See* U.S. Const. amend. VIII; Iowa Const. art. I, § 17. The statute at issue provides, in pertinent part:

> A person convicted of a class "C" felony or greater offense under chapter 709, . . . shall also be sentenced, in addition to any other punishment provided by law, to a special sentence committing the person into the custody of the director of the Iowa department of corrections for the rest of the person's life, with eligibility for parole as provided in chapter 906. The board of parole shall determine whether the person should be released on parole or placed in a work release program. The special sentence imposed under this section shall commence upon completion of the sentence imposed under any applicable criminal sentencing provisions for the underlying criminal offense and the person shall begin the sentence under supervision as if on parole or work release.

Iowa Code § 903B.1.

Webber claims the district court erred in denying his motion without affording him a hearing with meaningful representation and without explaining the basis for the denial of his constitutional challenges. Webber asks us to vacate his parole term and remanded for resentencing. Short of that, he asks for the case to be remanded for further proceedings to allow the parties to present evidence relevant to the gross-disproportionality claim. Before addressing Webber's requests, we consider whether his case is ripe for review.

**A.      Ripeness**

Our court has declined to entertain similar constitutional challenges to section 903B.1 special sentences because offenders have brought them before they were ripe for review.  *See, e.g.*, *State v. Robinson*, No. 15-0614, 2016 WL 1130611, at *1 (Iowa Ct. App. Mar. 26, 2016) (noting defendant was not yet on parole); *State v. Hall*, No. 15-0341, 2016 WL 541064, at *2 (Iowa Ct. App. Feb. 10, 2016) (same); *State v. Doornink*, No. 13-1823, 2015 WL 5278925, at *2 (Iowa Ct. App. Sept. 10, 2015) (same); *State v. Justice*, No. 14-0151, 2014 WL 5862041, at *1 (Iowa Ct. App. Nov. 13, 2014) (same); *State v. Garza*, No. 13-1893, 2014 WL 6804531, at *4 (Iowa Ct. App. Aug. 27, 2014) (same); *State v. Poulson*, No. 11-1340, 2012 WL 1864790, at *4 (Iowa Ct. App. May 23, 2012) (same).  In all of those decisions, our court relied on *State v. Tripp*, 776 N.W.2d 855, 858-59 (Iowa 2010), which held a defendant's cruel-and-unusual-punishment challenge was not ripe because the defendant was still serving a probationary term and was not yet serving the section 903B.1 special parole sentence.

The posture of this case differs from *Tripp* and its unpublished progeny.  Webber's pro se motion to correct illegal sentence asserted "this case is ripe to hear as the defendant has completed his original sentence but is now being given a Lifetime Sentence for the same charge he just finished serving time for."  On appeal, Webber explains the issue is ripe because he discharged his underlying probationary sentence in June 2012 and started his section 903B supervision before filing his motion to correct illegal sentence.  The State agrees Webber's challenge to the lifetime special sentence is ripe for review.  Because

Webber is now subject to the provisions of section 903B.1, we conclude his challenge is ripe for adjudication.

### B.     Hearing for Individualized Assessment

We turn to the question of whether Webber's motion to correct illegal sentence merited an evidentiary hearing in the district court.

In *State v. Sallis*, our court concluded section 903B.1 was not grossly disproportionate to the gravity of the offenses to which it applied and its imposition did not constitute cruel and unusual punishment.  786 N.W.2d 508, 517 (Iowa Ct. App. 2009) ("Section 903B.1 imposes a special sentence upon the conviction of a class "C" felony or greater sex offense.").  We relied on *State v. Wade*, 757 N.W.2d 618, 624 (Iowa 2008), in holding the threshold test for gross disproportionality, that is measuring the harshness of the penalty against the gravity of the offense, was "an objective analysis completed without considering the individualized circumstances of the defendant or the victim in the present case." *Id*.

Less than three months after we decided *Sallis*, our supreme court issued its groundbreaking decision in State v. *Bruegger*, which called into doubt *Wade*'s rejection of an individualized assessment by explaining:

> [W]e do not believe that a defendant can never challenge a sentence as cruel and unusual as applied. If individualized consideration of the facts and circumstances were never allowed, legislatures could eviscerate judicial review of the proportionality of punishment by broadly defining crimes and imposing mandatory stiff penalties in all cases. Such broadly-framed statutes would survive facial attack if the accompanying penalties were appropriate to some but not all crimes within the statute's broad ambit.

773 N.W.2d 862, 884 (Iowa 2009). From this premise, *Bruegger* concluded, "at least in some instances, defendants who commit acts of lesser culpability within the scope of broad criminal statutes carrying stiff penalties should be able to launch an as-applied cruel and unusual punishment challenge." *Id.* (citing *State v. Davis*, 79 P.3d 64, 72-73 (Ariz. 2003) (en banc) (holding where broad sweep of statute makes no distinction between perpetrators of incest, serial pedophiles, and statutory rape—in some cases consisting of "the more benign boyfriend-girlfriend situation in which one party is older than eighteen and the other younger than fifteen"—an as-applied challenge was permissible) and *State v. Berniard*, 860 So. 2d 66, 75 (La. Ct. App. 2003) (holding defendant may attack mandatory sentence by showing he is exceptional, that legislature has failed "to assign sentences that are meaningfully tailored to the gravity of the offense, the culpability of the offender, and the circumstances of the case")).

The court decided Bruegger was entitled to bring a cruel-and-unusual-punishment challenge due to the "unusual convergence of a broadly-defined criminal statute, the use of a juvenile adjudication when [Bruegger] was twelve to enhance his sentence, and the dramatic increase in his punishment as a result the enhancement." *Id.* at 885. The *Bruegger* court remanded for an evidentiary hearing because the record was factually deficient to perform a gross proportionality analysis. *Id.* at 885-86.

After *Bruegger*, federal case law clarified the "lexicon for Eighth Amendment analysis no longer includes the terms 'facial challenge' and 'as-applied challenge.' Instead, the defendant must challenge his sentence under the 'categorical' approach or make a 'gross proportionality challenge to [the]

particular defendant's sentence.'" *State v. Oliver*, 812 N.W.2d 636, 639-40 (Iowa 2012) (citing *Graham v. Florida*, 560 U.S. 48, 60 (2010)). *Oliver* expounded that a defendant may bring the latter kind of challenge to his or her particular sentence "regardless of the presence or absence" of certain "unique factors" generating a high risk of potential gross disproportionality. *Id.* at 651 n.12.

Such a particularized sentencing challenge is governed by the three-step analysis from *Solem v. Helm*, 463 U.S. 277, 290-92 (1983). The first step, sometimes referred to as the threshold test, requires a court to determine if a sentence leads to an inference of gross disproportionality. *Bruegger*, 773 N.W.2d at 873. "This preliminary test involves a balancing of the gravity of the crime against the severity of the sentence." *Id.* The *Solem* court "noted, among other things, that the culpability of the offender, including his intent or motive in committing a crime, may be considered in determining the proportionality of the penalty to the offense." *Id.* at 875 (citing *Solem*, 463 U.S. at 293).

If, and only if, the threshold test is met, does a court perform steps two and three of the analysis. *Id.* at 873. Step two is an intrajurisdictional analysis "comparing the challenged sentence to sentences for other crimes within the jurisdiction." *Id.* Step three is in an interjurisdictional analysis "comparing sentences in other jurisdictions for the same or similar crimes." *Id.*

Finally, our "review of criminal sentences for 'gross disproportionality' under the Iowa Constitution should not be a 'toothless' review"—Iowa courts apply article I, section 17 for "a more stringent review than would be available under the Federal Constitution." *Id.* at 883 (citations omitted).

In this case, Webber's pro se motion sought a hearing on the gross disproportionality of his sentence. The district court summarily denied the motion without granting a hearing, despite the fact Webber (twice) had been appointed counsel to represent him on the motion to correct illegal sentence. The district court's two-sentence denial did not cite *Solem*, *Bruegger*, *Oliver*, or any case law. We believe denying Webber's motion without giving any rationale and without a hearing was error under the circumstances of this case.

Admittedly, our court has recently upheld district court denials of motions to correct illegal sentence without remanding for evidentiary hearings. *See State v. Titus*, No. 15-0486, 2016 WL 2745938, at *2 (Iowa Ct. App. May 11, 2016) (collecting cases); *see also State v. Clayton*, No. 13-1650, 2014 WL 7343315, at *1 (Iowa Ct. App. Dec. 24, 2014). For several reasons, we reach a different result here.[5]

First, at times our unpublished cases conflate the "threshold showing of gross disproportionality" under the first step of the *Solem* analysis *with* the pleadings necessary to merit an evidentiary hearing on a defendant's motion to correct illegal sentence. In *Titus*, 2016 WL 2745938, at *2, we decided an evidentiary hearing was unnecessary because the motion to correct an illegal sentence did not assert "unique" factors "creating an inference of gross disproportionality." Similarly, in *Clayton*, we found the motion to correct illegal

---

[5] In *State v. Cohrs*, the defendant asked this court to vacate his lifetime special sentence and remand for a hearing. No. 14-2110, 2016 WL 146526, at *1 (Iowa Ct. App. Jan. 13, 2016). Instead, we analyzed his gross proportionality claim using *Solem*'s threshold factor and found his sentence was not grossly disproportionate based on the following facts: (1) Cohrs engaged in sexual intercourse with a fourteen-year-old girl despite their significant age disparity; (2) Cohrs was not in a relationship with the girl, stating he "[r]eally didn't know her"; and (3) Cohrs had "just met her for the first time that night." *Id.* at *4.

sentence "did not establish an inference of gross disproportionality between the underlying crime and the sentence" and opined, "[w]ithout more," we could not say the district court should have afforded Clayton a hearing on his claim. 2014 WL 7343315, at *1. We noted, in "the interest of judicial efficiency," a "mere claim" of disproportionality was insufficient to require an expanded hearing and advised, "at a minimum," a motion to correct an illegal sentence should allege why the sentencing hearing was inadequate to set forth "a defendant's individual facts or the legal issue raised." *Id.* at *1 n.1.

Even if district courts used *Clayton*'s measure to decide whether defendants raising disproportionality challenges to prison terms should be afforded a hearing on their motions to correct illegal sentences, the standard would not apply here because Webber's objection to the lifetime parole provision was not ripe for review at his original sentencing hearing. Under *Tripp*, Webber's objection could only be raised after he was actually subjected to the post-release supervision. *See* 776 N.W.2d at 859.

Second, our reference to "unique" factors in *Titus* and *Clayton*, while true to the discussion in *Bruegger*, does not take into account the Iowa Supreme Court's subsequent clarification in *Oliver*'s footnote, which opened a path for a constitutional challenge to a particular sentence even without the convergence of certain "unique" factors. *See Oliver*, 812 N.W.2d at 651 n.12. The State argues footnote twelve does not mean every challenge requires an evidentiary hearing, quoting *Oliver*'s affirmation that "it is rare that a sentence will be so grossly disproportionate to the crime to satisfy the threshold inquiry and warrant further review." *Id.* at 650. We agree only the rare sentence will ultimately be declared

grossly disproportionate and require additional analysis under step two and three of *Solem*. But under *Oliver*, we do not believe that same level of "rarity" is necessary to simply merit a hearing on a motion to correct illegal sentence alleging gross disproportionality.

Third, neither *Clayton* nor *Titus* involved the special sentence under section 903B.1, subjecting the defendant to the possibility of a lifetime of supervision. Parole is a more lenient form of punishment than incarceration, and the imposition of lifetime parole is not tantamount to a sentence of life in prison. *Tripp*, 776 N.W.2d at 858. But our supreme court has not foreclosed a disproportionality challenge to a lengthy supervisory sentence. The harshness of such a penalty was well described by a dissenting justice of the Kansas Supreme Court, recognizing a young adult sentenced to lifetime supervision essentially "will not experience another day of freedom the rest of his life. The government can control what he does and where he goes for the next 40, 50, perhaps even 60 or 70 years." *State v. Mossman*, 281 P.3d 153, 172 (Kan. 2012) (Johnson, J., dissenting).

Since our supreme court opened up rule 2.24(5)(a) to constitutional challenges in *Bruegger*, it has not directly addressed when a motion alleging gross disproportionality requires a district court to hold an evidentiary hearing. *See Clayton*, 2014 WL 7343315, at *2 (Tabor, J., specially concurring). In the absence of specific guidance, we take clues from *Bruegger* and *Oliver* and remand this case for a hearing.

In *Bruegger*, the defendant did not raise the issue of cruel and unusual punishment before the district court. *Bruegger*, 773 N.W.2d at 885. Accordingly,

the parties had no opportunity to present evidence on the issue. *Id.* (finding record factually deficient to evaluate defendant's claim and remanding case). By contrast, in *Oliver*, no remand was necessary because both the defendant and the State presented the type of evidence at the sentencing hearing that the *Bruegger* court found lacking in its record and "the court addressed the constitutionality" of Oliver's mandatory sentence "prior to sentencing." *Oliver*, 812 N.W.2d at 649-50.

When it comes to establishing a factual record for Webber's constitutional claim, we find the procedural posture here more akin to *Bruegger* than to *Oliver.* In his motion to correct illegal sentence, Webber attacked, for the first time, the constitutionality of the special sentence in section 903B.1. The pro se motion highlighted the lifetime implications of the parole sentence. The motion noted he was convicted of third-degree sexual assault and alleged the special sentence constituted cruel and unusual punishment in violation of the Iowa and Federal Constitutions. And Webber specifically requested his motion be set for an "[e]videntiary hearing . . . with his participation . . . where all facts and issues of this filing can be fully and fairly determined."

It is true Webber's pro se motion did not include enough facts to raise an inference of gross disproportionality—that is, it did not satisfy the first step of the *Solem* analysis. But as a pro se litigant, Webber was "entitled to a liberal construction of his pleadings." *See Munz v. State*, 382 N.W.2d 693, 697 (Iowa Ct. App. 1985). To merit a hearing, Webber's motion needed to raise a claim that could best be evaluated by giving the parties an opportunity to fully explain the facts and circumstances of the offense. *See Oliver*, 812 N.W.2d at 649-50

("Creating a proper record would require giving the defendant an opportunity to fully explain the facts and circumstances of his prior offense. It would also involve giving the State a chance to present evidence of the impact on the victim and her family, the defendant's lack of remorse, his inability to respond to rehabilitative services, and the need to incapacitate the defendant."); *Bruegger*, 773 N.W.2d at 886 (explaining *Solem*-type approach for appraising Bruegger's cruel-and-unusual-punishment claim could not be applied without a proper record).

In this vein, the district court properly considered "the court file" in evaluating Webber's motion to correct an illegal sentence. But the court did not explicate what facts in the file it found relevant to the gross disproportionality analysis or why it found lifetime supervision was commensurate to the gravity of Webber's offense. We believe Webber's motion calls for greater scrutiny by the district court.

Webber was convicted of "statutory rape" under section 709.4(2)(c)(4)—which *Bruegger* described as a "broadly framed crime." 773 N.W.2d at 884. On appeal, Webber claims his interaction with C.R. fell into the less culpable, "Romeo and Juliet" type offense. Webber points out, if they had been six months closer in age, his actions would not have been criminal. Webber asserts he did not seek out a younger partner. Rather, he and C.R. "ran in the same social circle" and met through mutual friends. Webber denies using force or coercive tactics to convince her to engage in sexual acts. He argues their sexual encounter "was (factually though not legally) consensual" and C.R. wanted to continue their relationship even after the police were involved. The minutes also

reflect that C.R. told police the sex acts were "consensual" and Webber "hadn't made her do anything she didn't want to do." On appeal, Webber's counsel pulled information from the record indicating Webber performed poorly in his high school classes, may have "matured at a different rate" than his peers, and did not have any other history of sexual offenses.

Without a hearing, Webber did not have the opportunity to highlight facts and circumstances that could qualify his offense as "the rare case" described in *Bruegger*, 773 N.W.2d at 884-86. Conversely, the State did not have a chance to present evidence showing the impact of the crime on the victim and how, "under all the facts and circumstances," Webber's sentence was not cruel and unusual. *See id.* at 876. In addition, this record lacks information about the current conditions of Webber's parole or whether it is likely he will ever be released from supervision.[6] Because the current record is inadequate for us to decide Webber's constitutional claim, we remand for a hearing on the gross disproportionality of Webber's special sentence.[7] *Cf. State v. Denato*, 173 N.W.2d 576, 579 (Iowa 1970) (remanding for hearing on factual situation involving disclosure of informant's identity because it was "impossible for us to knowingly resolve the issue" on appeal).

---

[6] Webber acknowledges the full extent of his supervision "is not clear on the existing record" but urges "that information would appropriately be offered into evidence at a hearing on remand." We agree the question of the actual length of his parole and the extent of his supervision would be pertinent facts to establish on remand. *See Tripp*, 776 N.W.2d at 858 (stating "Tripp is not currently on parole . . . [and we] do not know the terms of his parole and the extent to which those terms may be onerous" and noting "the special sentence is not necessarily for life" as the possibility of early discharge exists).

[7] In *State v. Graham*, No. 15-1464, 2016 WL 3556539, at *4-6 (Iowa Ct. App. June 29, 2016), our court decided a lifetime special sentence was not grossly disproportionate to a third-degree sexual assault involving a seventeen-year-old defendant and thirteen-year-old victim, but in that case Graham had the benefit of a hearing in the district court.

### C.      Right to Counsel

On the question of the right to counsel, Webber emphasizes that two different district court judges appointed counsel to assist with his pro se motion to correct an illegal sentence.  On appeal, the State claims Webber is not entitled to counsel.  But in the district court, the State did not challenge the appointment of counsel to Webber; therefore, the State did not preserve error on this argument.  *See DeVoss v. State*, 648 N.W.2d 56, 63 (Iowa 2002); *State v. Fuller*, No. 12-2041, 2014 WL 1245309, at *2 (Iowa Ct. App. Mar. 26, 2014).  Accordingly, we do not reach the merits of the State's arguments regarding Webber's right to counsel.  Webber should be appointed counsel to represent him during the remand hearing.  *See generally Chartier v. State*, 223 N.W.2d 255, 256 (Iowa 1974) (finding district court erred in not appointing counsel when legal assistance would have been beneficial to pro se applicant and "could have been conducive to a more complete record").

**WRIT SUSTAINED AND REMANDED FOR FURTHER PROCEEDINGS.**